**Jeff T. CAPRIN and Michele A. Caprin, et al., Plaintiffs,**

v.

**SIMON TRANSPORTATION SERVICES, et al., Defendants.**

**No. 2:98–CV–863K.**

United States District Court, D. Utah, Central Division.

Sept. 27, 2000.

C. Richard Henriksen, Jr., Henriksen & Henriksen, Salt Lake City, UT, Lionel Z. Glancy, Peter A. Binkow, Michael B. Ackerman, Michael Goldberg, Los Angeles, CA, Kenneth J. Catanzarite, Catanzarite Law Corp., Anaheim, CA, Tracy L. Thrower, Law Offices of Lionel Z. Glancy, Los Angels, CA, Ralph W. Curtis, Salt Lake City, UT, for Plaintiffs.

R. Brent Stephens, Snow Christensen & Martineau, Salt Lake City, UT, Lloyd Winawer, Brian Arnold, Mark Labaton, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, Stephen J. Hill, Linux Networx, Sandy, UT, for Defendants.

## ORDER AND OPINION

KIMBALL, District Judge.

This matter is before the court on defendants' Motion to Dismiss the Second Amended Complaint. The matter came on for hearing on Wednesday, July 19, 2000. The plaintiffs were represented by Lionel Z. Glancy and defendants were represented by Lloyd Winawer. Oral argument was heard and the matter was taken under advisement. The court has considered all pleadings, memoranda, and other materials submitted by the parties. The court has further considered the law and facts relevant to the defendants' motion. Now being fully advised, the court enters the following order.

## I. BACKGROUND

The defendant, Simon Transportation Services ("STS"), is headquartered in West Valley City, Utah and provides refrigerated truckload transportation for food shippers. The company was founded by Richard D. Simon in 1955 and went public in November of 1995. The Company experienced strong growth following its initial public offering, posting five successive quarters of increased revenues and earnings. In fiscal year 1996 STS's revenues grew to approximately $101 million, an increase of approximately $26 million (34%) from the prior year, and pro-forma net earnings more than doubled, increasing to $3.9 million. After five quarters of reported growth, STS completed a Secondary Offering of 2.2 million shares of Class A common stock at $16 per share for proceeds of $21.5 million. Plaintiffs state that defendants, as well as other immediate members of the Simon family, sold stock in the Secondary Offering worth more than $11 million. Defendants allege that other individuals sold a total of 995,000 shares in the offering. The Secondary Offering took place on February 13, 1997.

The defendants state that notwithstanding the company's success, the secondary offering prospectus warned of several risks. It cautioned about risks associated with hiring, retaining, and compensating drivers. It warned of the financial consequences of an increase in the number and severity of accidents in the future. It warned that operating expenses "historically have been higher in winter months due to decreased fuel efficiency and increased maintenance costs in colder weath-

er" and that "results of operations are subject to fluctuation." Finally, according to defendants, the company warned that its stock price might be subject to "significant volatility" and that quarterly operating results could cause the Company's stock to "fluctuate substantially".

Plaintiffs, on the other hand, allege that in order to effect the secondary offering and to continue to meet the analysts' expectations following the secondary offering so that defendants could ensure the company's return to capital markets at a future date, as well as to artificially inflate the value of their personal stock holdings, defendants undertook a course of conduct designed to manipulate STS's financial statements and otherwise manage the company's earnings. Plaintiffs allege that defendants failed to timely report accident claims; that they failed to timely disclose the true extent of operations problems; that they failed to disclose the materially misleading nature of the company's reported equipment sales figures; and that they failed to disclose that they depended upon drivers who consistently violated federally mandated hours of service regulations. Plaintiffs allege that reasonable investors would have wanted to know that, going forward, the company could not legitimately support the revenue numbers publicly forecasted throughout the Class Period and that its impaired drivers were increasing the risks of severe accidents.

On February 12, 1998, six weeks before the end of the Company's second fiscal quarter of 1998 ("Q298"), and one year after the secondary offering, STS pre-announced that it expected revenues and earning for Q298 and the 1998 fiscal year to be substantially below expectations resulting from: (1) delays in the delivery of new tractors; (2) a substantial number of "unseated" tractors; (3) a two-cent per mile driver pay increase; (4) increased costs associated with a new terminal; and (5) increased costs associated with acquiring new trailers and disposing of old ones.

After the announcement STS's stock declined from $17.125 per share to $13.375.

On April 2, 1998, STS announced that it expected to report a loss of between $1.5 million and $2 million for the second quarter. STS announced that revenues were expected to be $6 million below expectations. Defendants alleged that the loss resulted from a revenue shortfall, increased expenses associated with driver wages, and claims expense due to unusually severe accident experience. The stock fell from $15.0625 per share to $9.125 per share.

Plaintiffs filed this action on December 3, 1998. On June 10, 1999 the Lead Plaintiff Group filed a First Amended Class Action Complaint which included additional claims under Sections 10(b) and 20(a) of the Exchange Act.[1] On July 28, 1999 defendants filed a motion to dismiss. The court granted leave to amend and the plaintiffs filed the Second Amended Complaint on February 4, 2000 which is the subject of this motion. The Second Amended Complaint alleges violation of § 11 of the Securities Act against all defendants; violation of § 12(2) of the Securities Act against all defendants; violation of § 15 of the Securities Act against the individual defendants; violation of § 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder against all defendants; and violation of § 20(a) of the Exchange Act against the individual defendants.

## II. STANDARD OF REVIEW

Defendants move to dismiss pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, and the provisions of the Private Securities Litigation Act of 1995, Pub.L. No. 104–67m 109 Stat. 737 (1995) (the "Reform Act").

A complaint will not be dismissed pursuant to Rule 12(b)(6), for failure to state a claim, "unless it appears beyond doubt

---

1. This matter has not been certified as a class action.

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". *Shoultz v. Monfort of Colorado, Inc.*, 754 F.2d 318 (10th Cir.1985), *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote omitted). For purposes of considering a motion to dismiss, the court is to accept all of the factual allegations in the plaintiffs' complaint as true and ask whether, in these circumstances, dismissal of the complaint is appropriate. *See Berkovitz v. United States*, 486 U.S. 531, 540, 108 S.Ct. 1954, 1961, 100 L.Ed.2d 531 (1988). Legal conclusions, deductions, and opinions couched as facts are, however, not given such a presumption. *Mitchell v. King*, 537 F.2d 385 (10th Cir.1976); *Swanson v. Bixler*, 750 F.2d 810 (10th Cir.1984).

■■■ "The purpose of Rule 9(b) is to prevent the filing of a complaint as a pretext for the discovery of unknown wrongs." *In re Silicon Graphics, Inc. Securities Litigation*, 970 F.Supp. 746, 752 (N.D.Cal. 1997). Toward this end, Rule 9(b) imposes particularized pleading requirements on plaintiffs alleging fraud or any claim premised on fraud. The rule provides: In all averments of fraud or mistake, the circumstances constituting fraud shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally. As interpreted, the rule requires a plaintiff to identify the time, place, and content of each allegedly fraudulent representation or omission, to identify the particular defendant responsible for it, and to identify the consequences thereof. *See Karacand v. Edwards*, 53 F.Supp.2d 1236 (D.Utah 1999).

In the securities context, a plaintiff must also allege facts showing that an alleged misstatement is false. Fed.R.Civ.P. 9(b) requires that to state a claim for securities fraud, "the plaintiff must set forth what is false or misleading about a statement, and why it is false". In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. *See* Id.

In 1995 Congress passed the Reform Act in order to heighten rule 9(b)'s pleading standards, concluding that the previously existing standards had not prevented abuse of the securities laws by private litigants. The Reform Act imposes even more rigorous pleading requirements on plaintiffs alleging fraud in the securities context. A complaint under the Reform Act must "specify each statement alleged to have been misleading" as well as "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1). In addition, the plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" and must do so with respect to each act or omission alleged to be a violation of the securities laws. 15 U.S.C. § 78u–4(b)(2). Furthermore, with respect to allegations made on information and belief, the complaint "shall state with particularity all facts on which the belief is formed." 15 U.S.C. § 78u–4(b)(1). The Reform Act mandates dismissal upon motion of the defendant if the complaint fails to meet these requirements. 15 U.S.C. § 78u–4(b)(3)(A). *See Karacand* (citations omitted).

### III. *DISCUSSION*

#### A. The Reform Act

The defendants argue that the plaintiffs' claims under Section 10(b) and rule 10b–5, do not satisfy the Reform Act's requirements for pleading falsity. As stated above, Congress passed the Reform Act in an effort to heighten Rule 9(b)'s pleading standards, concluding that the previously existing pleading standards had not prevented abuse of the securities laws by private litigants. *See Karacand* at 1242. Pursuant to 15 U.S.C. § 78u–4(b)(1)(B), plaintiffs must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." *See* Id. If a complaint is pleaded on information and belief, plain-

tiffs must "state with particularity all facts on which that belief if formed." Id. The plaintiff must provide a list of all relevant circumstances in great detail. The Reform Act requires dismissal of a complaint that does not meet these requirements.

### 1. Materiality

■ "A statement or omission is only material if a reasonable investor would consider it important in determining whether to buy or sell stock." *Grossman v. Novell, Inc.,* 120 F.3d 1112 (10th Cir. 1997). As stated in *Karacand:* "Whether a misstatement or omission is material is determined by a two-step inquiry. A court must first determine whether the information would be considered important by a reasonable investor; if so, the court must then determine whether the information would still be considered important in light of other information already available to the market" *Id.* at 1242.

Plaintiffs allege that the nature of the defendants' offering documents were materially misleading going all the way back to the secondary offering. Plaintiffs allege that defendants failed to accrue adequate reserves for accidents; that they improperly manipulated operating expenses; and that the reported gains from equipment sales were misleading. Plaintiffs plead that the defendants intentionally and fraudulently misrepresented how it selected and trained its drivers. Further, plaintiffs claim that defendants' financial statements violated generally accepted accounting principles ("GAAP").

Plaintiffs' core allegation appears to be that the defendants understated accident reserves during the class period and thereby fraudulently overstated its earnings. Plaintiffs allege that defendants' reserves were understated in two respects: (1) defendants failed to properly accrue for exposure on existing claims and (2) defendants failed to establish adequate accruals for probable insurance risks. Plaintiffs allege that STS would sometimes wait up to six months or more, to report the claims to the insurance carrier for the reasons that reporting accidents immediately would result in a situation where STS could not meet its quarterly earnings estimates.

Defendants argue that plaintiffs have misinterpreted STS's publicly disclosed accrual policy and that they mischaracterize the evidence upon which they rely. Further, plaintiffs have alleged no facts demonstrating that STS's reserve estimates were outside the bounds of permissible judgment much less fraudulent. Defendants further state that plaintiffs have misread STS's accrual policy. STS's policy was to accrue liabilities for accidents when the accidents were reported to STS, not when STS reported the accidents to its insurance carrier. Plaintiffs' failure to recognize this distinction has caused them to draw the unwarranted inference that a delay in reporting accidents to STS's insurer means that STS did not accrue reserves for those accidents in the quarter in which they occurred. As disclosed, STS accrued reserves contemporaneously with the occurrence of accidents reported to the Company based upon available information, including the recommendation of a third-party claims adjuster.

■ This court agrees that plaintiffs have not plead facts demonstrating that STS employed impermissible judgment when calculating its reserves. Courts have recognized that the application of accounting principles often "tolerate a range of reasonable treatments, leaving the choice among alternatives to management". *In re Oak Tech Securities Litigation,* 1997 WL 448168, at *9 (N.D.Cal. Aug 1, 1997).

■ Plaintiffs further allege that STS committed fraud by failing to accrue reserves for accidents in the future. In the April 2, 1998 announcement STS cited an increase in accidents as one explanation for the decreased revenues. Plaintiffs allege on the one hand that defendants should have foreseen an increase in accidents due to the fact that defendants knew or recklessly disregarded that the drivers

were engaging in the practice of driving excess hours and that the drivers were improperly trained. On the other hand, plaintiffs argue that STS did not experience an increase in accidents and that the statement in the April 2, 1998 disclosure is misleading. Plaintiffs do not explain how STS could have reasonably estimated the amount of loss from accidents that had not yet happened. Further, this court agrees with the defendants that it would have been improper for STS to accrue a reserve for an accident that had not yet occurred. Lastly, the plaintiffs have not adequately set forth facts that support their argument that STS's report of an increase in accidents was fraudulent. Plaintiffs merely point to the number of fatalities in 1998 compared to other years and state that since fatalities were less in '98 it follows that accidents were less severe and therefore defendants report that accidents were more severe is fraudulent. The allegations on this point are not sufficient under the Reform Act.

■ Plaintiffs further allege that STS's financial statements were rendered materially misleading by the fraudulent reporting of operating supplies and expenses ("OS & E"). First, plaintiffs allege that during the alleged class period STS was wrongfully concealing in OS & E material amounts of money related to accidents. Second, plaintiffs allege that STS manipulated the underlying operating expenses by deferring significant amounts of OS & E into future quarters in contravention of GAAP. Defendants argue that plaintiffs allegations are inconsistent and fail to state a claim.

Plaintiffs further allege that defendants knew that the company could not meet the projected quarterly revenue goal and that they knew of the false and misleading nature of the quarterly revenue forecast at the time they sold their stock. Plaintiffs also argue that even forward-looking statements are subject to liability where plaintiffs allege actual knowledge of the misleading facts.

This court agrees with the defendants that plaintiffs fail to state a claim under the Reform Act. Plaintiffs allegations are inconsistent and conclusory. Plaintiffs allegation that STS concealed accident related expenses in OS & E is conclusory in that plaintiffs allege that STS experienced a significant number of expensive accidents during the alleged class period. According to plaintiffs, expenses associated with these accidents should have been included in STS's reported OS & E but were not. On the one hand, plaintiffs allege that STS should not have recorded accident related expenses in OS & E; on the other hand, plaintiffs allege that OS & E was understated by STS's failure to include accident related expenses. Plaintiffs cannot have it both ways. Further, plaintiffs never specify any amounts of expenditures that defendants were required to report. They merely allege that the fact that OS & E increased in Q298 means that STS fraudulently understated OS & E in prior periods. These allegations are not sufficient. Plaintiffs allegations are based upon hindsight and not upon specific facts. Further, as discussed below, the Prospectus issued by the defendants which warned of the problems forthcoming, falls within the Reform Act's Safe Harbor rule and defendants are therefore protected.

2. The Safe Harbor Doctrine

■ In *Karacand v. Edwards*, 53 F.Supp.2d 1236 (D.Utah 1999), this court set forth a the following explanation of the Safe Harbor Doctrine:

> The Safe Harbor provides that a defendant shall not be liable for a forward-looking statement if it "is identified as a forward-looking statement and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u–5(c)(1)(A). As defined in the statute, a "forward-looking statement" is a projection of financial items, a description of manage-

ment's plans and objectives for future operations or economic performance, or the stated assumptions underlying these projections. 15 U.S.C. § 78u–5(i)(1). The Safe Harbor does not apply to the extent a statement was made by a person or entity having actual knowledge that it was false or misleading. 15 U.S.C. § 78u–5(c)(1)(B).

"Cautionary statements" are considered "meaningful" if they "convey substantive information about factors that realistically could cause results to differ materially from those projected in the forward-looking statement, such as, for example, information about the issuer's business" (citation omitted). However, the "failure to include the particular factor that ultimately causes the forward-looking statement not to come true will not mean that the statement is not protected by the safe harbor" (citation omitted). Courts must determine, at the pleading state, whether a company's forward-looking statements fall within the Safe Harbor. 15 U.S.C. § 78u–5(e).

*Karacand* at 1243.

As discussed in detail thus far, the plaintiffs have not sufficiently alleged that the defendants had actual knowledge that the statements in the forward-looking statement were false or misleading and therefore, the defendants are protected by the Safe Harbor Doctrine.

### 3. Scienter

Section 10(b) does not reach unintentional conduct; the scienter element requires plaintiffs to prove the defendants' intent to defraud. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Prior to the enactment of the Reform Act, plaintiffs were permitted to aver scienter generally. However, as previously mentioned, the Reform Act now requires plaintiffs "to state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" with respect to each act or omission alleged. 15 U.S.C. § 78u–4(b)(2). *See Karacand* at 1244.

 In arguing that the plaintiffs have not sufficiently plead scienter, the defendants rely upon opinions from the Third, Sixth and Ninth Circuits. In *In re Silicon Graphics, Inc.*, 183 F.3d 970 (9th Cir.1999), the Ninth Circuit held that allegations of "motive and opportunity" to commit fraud, which had sufficed under the standard previously applied by the Second Circuit, do not satisfy the Reform Act's strong inference requirement. Rather, plaintiffs must plead particularized facts "which give rise to a strong inference of deliberate recklessness"—"no less than a degree of recklessness that strongly suggests actual intent." *Id.* at 979, 985. The Sixth Circuit recently reached a similar conclusion. *See In re Comshare, Inc.*, 183 F.3d 542, 549 (6th Cir.1999) (Plaintiffs may not plead scienter "by alleging facts merely establishing that a defendant had the motive and opportunity to commit fraud."). The Third Circuit reached a slightly different conclusion holding "the Reform Act establishes a pleading standard approximately equal in stringency to that of the Second Circuit." *In re Advanta Corp.*, 180 F.3d 525, 534 (3d Cir.1999). The Third Circuit nevertheless also found that the Reform Act's "particularity" requirement "represents a heightening of the [Second Circuit] standard."

Plaintiff relies upon the less stringent pleading standard as set forth by the Second Circuit which has held that plaintiff may raise a strong inference of scienter by pleading either motive and opportunity to commit fraud; or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *See Ganino v. Citizens Utilities Co.*, 228 F.3d 154 (2nd Cir.2000) and *Shields v. Citytrust Bancorp Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994). The plaintiffs argue that to impose a higher standard would make it extremely difficult to sufficiently plead a 10b–5 claim.

■ This court has previously adopted the higher pleading standard articulated by the Ninth and Sixth Circuits, as opposed to the motive and opportunity standard used by the Second Circuit. *See Karacand.* Using the particularity requirement, the plaintiffs in this matter have not sufficiently alleged scienter. Plaintiffs have plead no more than motive and opportunity which is insufficient under the Reform Act. For example, plaintiffs stock sale allegations have no independent significance. Stock sale allegations may illustrate that defendants had a motive and the opportunity to commit securities fraud, but they do not show that defendants knowingly made false statements. Further, plaintiffs allegations that the contents of the internal revenue report support scienter do not hold up. Nothing in the report that covered January of 1998 through March of 1998 suggests that STS was aware of operational problems back when the secondary offering occurred in February of 1997. Even though the report reflects a loss in January of 1998, this does not mean that defendants knew that business would not improve in February and March. Also, nothing in the January results forebode the loss suffered in March of 1998.

### B. Securities Act Claims

■ In addition to the claims under the Exchange Act, plaintiffs have also alleged claims under Sections 11, 12(2) and 15 of the Securities Act. The defendants argue that these claims are barred by the applicable statute of limitations.

■ Pursuant to 15 U.S.C. § 77(m), claims under Sections 11, 12(2) and 15 of the Securities Act must be asserted within one year after the plaintiffs had actual or inquiry notice of the alleged violation. Defendants argue that the facts are clear that plaintiffs knew of the alleged misrepresentations and omissions upon which they base their Securities Act claims by no later than April 2, 1998. In the First Amended Complaint plaintiffs alleged that STS "failed to fully disclose the true extent of its spiraling problems until April 2, 1998." However, plaintiffs did not assert their Securities Act claims until June 10, 1999, more than one year after they learned of those claims.

Plaintiffs argue that pursuant to *Sterlin v. Biomune Systems,* 154 F.3d 1191 (10th Cir.1998) a court must first determine whether an investor has been "put on 'inquiry notice' of possible misrepresentations." *Id.* at 1196. Secondly, the court must then ascertain when a reasonably diligent investor would have discovered the facts underlying the alleged fraudulent activity, thus triggering the statute of limitations. Plaintiffs argue that they have never received inquiry notice of defendants improper insurance accrual activities, activities which made the financial statements in the offering documents false or misleading. Because the plaintiffs still have not been put on inquiry notice the one year portion of the statute of limitations has not yet started to run. According to plaintiffs it is undisputed that the Securities Act claims were filed before February 2000, the outside limit for filing Securities Act claims regardless of inquiry notice.

Defendants argue that plaintiffs clearly had inquiry notice no later than April 2, 1998. This was the date that STS fully disclosed its spiraling operational problems. The April 2nd announcement followed STS's February 12, 1998 announcement that second quarter results would fall below expectations. Plaintiffs have alleged that STS's stock declined significantly in response to both announcements, thus there can be no doubt that plaintiffs were on inquiry notice of their claim as of April 2, 1998. Further, there can be no doubt that a reasonable investigation would have uncovered facts underlying the dilatory Securities Act claims that plaintiffs have purported to assert. First, a reasonable inquiry would have uncovered the facts underlying plaintiff's allegation that STS's secondary offering registration

statement falsely represented that OS & E would most probably decrease as a percentage of revenue as newer trucks replaced older trucks in the fleet, and warranties kicked in to cover certain expenses. Second, a reasonable inquiry would have uncovered facts underlying plaintiffs' allegation that STS fraudulently manipulated its insurance accruals and operating expenses. Lastly, a reasonable inquiry would have uncovered facts underlying plaintiffs' allegation that STS's registration statement contained false statements concerning the Company's drivers and log monitoring.

This court agrees with the analysis set forth by the defendant. Plaintiffs were on inquiry notice as of April 2, 1998. Further, a reasonable inquiry would have uncovered the facts surrounding the Securities Acts allegations more than a year prior to the June 1999 filing. The Securities Acts allegations are untimely and therefore dismissed.

For the reasons stated herein, it is hereby

ORDERED that defendant's Motion to Dismiss is GRANTED and this matter is DISMISSED with prejudice.