Mark SPIEGEL, Bret K. Clayton, T. Kevin Jackson, Albert Sapiano, Richard C. Young, Clayton Barton, Robert J. Pauly, Barry Hart, Michael J. Slade, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

TENFOLD CORPORATION, William M. Conroy, Gary D. Kennedy, Robert P. Hughes, Adam Slovik, Jeffery L. Walker, and Robert W. Felton, Defendants.

No. 2:00–CV–652C.

United States District Court,
D. Utah,
Central Division.

March 19, 2002.

Scott A. Call, Steven W. Dougherty, Anderson & Karrenberg, Salt Lake City, UT, William S. Lerach, Edward P. Dietrich, Stephen P. Polapink, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Gregory M. Nespole, Wolf, Haldenstein, Adler, Freeman & Herz, New York City, Jennifer L. Finger, Jeffrey C. Block, Berman, Devalerio, Pease, Tabacco, Burt & Pucillo, Boston, MA, Charles J. Piven, Baltimore, MD, Francis M. Gregorek, Betsy C. Manifold, Wolf, Haldenstein, Adler, Freeman & Herz, San Diego, CA, Paul J. Geller, Cauley & Geller, Boca Raton, FL, David R. Scott, Scott & Scott, Colchester, CT, Mark A. Topaz, Schiffrin, Craig & Barroway, Bala Cynwyd, PA, Marc S. Henzel, Philadelphia, PA, for plaintiffs.

Michael L. Larson, Erik A. Christiansen, Parsons, Behle & Latimer, Salt Lake City, UT, Darryl P. Rains, Evan L. Land,

Morrison & Foerster, LLP, San Francisco, CA, Eugene G. Illovsky, Morrison & Foerster, Walnut Creek, CA, for defendants.

## ORDER

CAMPBELL, District Judge.

This is a securities suit brought by stockholders against Tenfold Corporation ("Tenfold") and certain Tenfold directors.[1] This lawsuit has not been certified as a class action. Plaintiffs allege that between May 21, 1999, and April 12, 2001 ("the Class Period"), Defendants issued materially false public statements and financial statements concerning Tenfold's business performance and prospects in violation of various provisions of the Securities Act of 1933 and the Securities and Exchange Act of 1934. The action comes before the court on Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiffs' amended complaint ("complaint") fails to state a claim. For the reasons discussed below, Defendants' motion is granted with leave given to Plaintiffs to file a motion to file a second amended complaint.

### Discussion

A. *Standard of Review*

For purposes of a 12(b)(6) motion, the court generally confines itself to the text of the complaint and accepts all well-plead facts as true. *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1251 (10th Cir.1997). Dismissal pursuant to Rule 12(b)(6) is appropriate only when it appears that plaintiffs can prove no set of facts in support of the claims asserted. *Grossman v. Novell, Inc.,* 120 F.3d 1112, 1118 (10th Cir.1997).

In the securities fraud context, a plaintiff is held to a strict standard of pleading. *Id.* at 1124. Traditionally, plaintiffs alleging securities fraud had to meet the heightened pleading requirement of Rule 9(b). Under Rule 9(b), a plaintiff is required to "set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." *Id.*

In 1995, Congress passed the Private Securities Litigation Reform Act ("Reform Act") in an effort to heighten Rule 9(b)'s pleading standards. "The Reform Act imposes even more rigorous pleading requirements on plaintiffs alleging fraud in the securities context." *Karacand v. Edwards,* 53 F.Supp.2d 1236, 1242 (D.Utah 1999); *see also In re Silicon Graphics, Inc. Sec. Litig.,* 183 F.3d 970, 983–84 (9th Cir.1999); *Caprin v. Simon Transp. Servs.,* 112 F.Supp.2d 1251, 1255 (D.Utah 2000); *Schaffer v. Evolving Sys., Inc.,* 29 F.Supp.2d 1213, 1219 (D.Colo.1998) ("[t]he Reform Act substantially modified, among other things, the standard for pleading securities fraud claims").

After the Reform Act, a securities complaint must first "specify each statement alleged to have been misleading" as well as "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1); *see also Karacand,* 53 F.Supp.2d at 1242;

---

1. The individual Defendants and their positions with Tenfold at all relevant times are:
   a. Gary Kennedy was the President and Chief Executive Officer.
   b. William M. Conroy was the Executive Vice President and Chief Operating Officer.
   c. Robert P. Hughes was the Senior Vice President and Chief Financial Officer.
   d. Adam Slovik was the Senior Vice President of Worldwide Applications.
   e. Jeffery L. Walker was the Chairman of the Board and Executive Vice President.
   f. Robert Felton was the Director and one of two members on the compensation committee. Collectively, the individual Defendants and Tenfold are referred to as "Defendants."

*Caprin,* 112 F.Supp.2d at 1255. "Mere conclusory allegations of falsity are insufficient." *Grossman,* 120 F.3d at 1124.

■ Second, and of particular significance here, a "complaint shall, ... state with particularity facts giving rise to a strong inference that the defendant[s] acted with the required state of mind" and must do so with respect to each act or omission alleged to be a violation of the securities laws. 15 U.S.C. § 78u–4(b)(2); *see also Karacand,* 53 F.Supp.2d at 1242; *Caprin,* 112 F.Supp.2d at 1255. To establish that a defendant acted with the requisite state of mind, or scienter, a plaintiff must demonstrate that: "(1) the defendant knew of the potentially material fact, and [that] (2) the defendant knew that failure to reveal the potentially material fact would likely mislead investors." *City of Philadelphia v. Fleming Cos., Inc.,* 264 F.3d 1245, 1261 (10th Cir.2001). Recklessness can satisfy the scienter requirement under § 10(b). *Id.* But scienter may not be pled through "fraud by hindsight" because corporate officials are liable only for failing to reveal "those material facts reasonably available to them." *Id.*

Finally, for allegations made on information and belief, the complaint "shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1); *see also Karacand,* 53 F.Supp.2d at 1242; *Caprin,* 112 F.Supp.2d at 1255. "The Reform Act mandates dismissal, upon motion of the defendant, if the complaint fails to meet these requirements." *Karacand,* 53 F.Supp.2d at 1242; *see also* 15 U.S.C. § 78u–4(b)(3)(A).

**B.** *Section 10(b) Claim*

■ To state a claim under § 10(b) of the Securities and Exchange Act of 1934, a plaintiff must allege:

(1) a misleading statement or omission of a material fact; (2) made in connection with the purchase or sale of securities; (3) with intent to defraud or recklessness; (4) reliance; and (5) damages. *Grossman,* 120 F.3d at 1118; *see also Karacand,* 53 F.Supp.2d at 1242.

Despite its length, the complaint here alleges only three categories of misleading statements: (1) statements about Tenfold's guarantee of "on time, on target, on budget" ("on time guarantee"), (2) statements about the capabilities of Tenfold's technology ("technology guarantee"); and (3) improper revenue recognition. The central question is whether the allegations in the complaint give rise to a "strong inference" that the Defendants made the statements with the intent to deceive. *See* 15 U.S.C. § 78u–4(b)(2).

**1. On Time Guarantee**

■ The complaint alleges that Defendants made repeated on time guarantee statements, despite allegedly failing to perform under its contracts. Defendants argue that such allegations are insufficient because (1) the on time guarantee was not a material misrepresentation and (2) scienter was not sufficiently alleged. Under the standards set forth above, the Plaintiffs have not sufficiently pled facts giving rise to a strong inference that the Defendants engaged in knowing or reckless misconduct when they made the on time guarantee statements.

To prove scienter, Plaintiffs assert that because Tenfold did not meet the original and subsequent deadlines for completion of applications, the court may infer that the Defendants knew Tenfold was not performing under its on time guarantee and that by making on time guarantees, they would likely mislead investors. (Pls.' Opp'n at 25–26). Plaintiffs argue that the court may infer such knowledge from allegations in the complaint concerning (1) a letter from Ohio Farmers Insurance ("OFI") sent to Walker and Kennedy and

(2) the individual Defendants' positions in the company.

Walker and Kennedy received a letter on May 21, 1999 from OFI informing them that the OFI contract was behind schedule. (Compl. at ¶ 25(j)). Plaintiffs argue that this letter gave Walker and Kennedy knowledge that their on time guarantee statements were false and were likely to mislead investors. The letter stated that: "We are concerned that Tenfold may be unable to meet its commitment to compete and provide a fully tested BOP Commercial Policy Manager within the time allowed by the contract" because "Tenfold is not providing staffing adequate in number and expertise." (*Id.*)

For the following reasons, the OFI letter does not establish that Walker or Kennedy knew that Tenfold could not correct the OFI problems. First, Tenfold was not yet late under the OFI contract, because the OFI contract specified that the application be operational as of June 28, 1999. (*Id.* at ¶ 25(f)). Second, the fact that a customer expressed concern about an upcoming deadline, by itself, does not establish that Tenfold could not meet the contract date. Third, this court cannot engage in "fraud by hindsight" and attribute to Walker and Kennedy knowledge that Tenfold would eventually not perform under the OFI contract simply because Tenfold later allegedly failed to meet its obligations. Finally, the OFI letter itself reveals only OFI's state of mind, but does not relate to either Walker or Kennedy's state of mind, which is the relevant inquiry. As such, the allegations regarding the OFI letter do not establish a strong inference of scienter.

Plaintiffs also allege that because of the individual Defendants' positions at Tenfold, they must have know that the company had failed to meet several deadlines on the OFI, Nielsen, and Utica contracts throughout the class period, and, accordingly, must have known that the on time guarantee statements were likely to mislead investors. However, the Tenth Circuit has clearly rejected this reasoning. *Fleming,* 264 F.3d at 1264 (citations omitted) ("[a]llegations that a securities fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny"). The complaint does not allege how the individual Defendants Slovik, Felton, Hughes, or Conroy had actual knowledge that Tenfold could not provide the contracted-for applications on time.

Moreover, the complaint must also sufficiently allege that Defendants knew that making the on time guarantee statements posed a substantial likelihood of misleading a reasonable investor in light of the total mix of information. *See id.* Tenfold did continue to make on time guarantee statements after the repudiation of several contracts, which could allow an inference of intent to mislead investors. Yet, the complaint also reveals a pattern of disclosure of negative business events. On May 10, 2000, Nielsen gave Tenfold notice of breach and began a 30–day cure period, but did not terminate the contract until June 14, 2000. (Compl. at ¶ 131). Tenfold notified investors of this event. (*Id.* at ¶ 57). The Utica contract was terminated on November 9, 2000. (*Id.* at ¶ 193). Again, Tenfold disclosed the Utica repudiation in its report of the third fiscal quarter of 2000. (*Id.* at ¶ 62). The OFI dispute did not result in contract termination and litigation until September 1999, but was fully and promptly disclosed in Tenfold's SEC 10–Q report filed that same month. (*Id.* at ¶ 30). The inference from such a pattern of disclosure is not that the individual Defendants knowingly misled investors, but rather that Defendants at-

tempted to inform investors of the problems as they arose.[2]

■ In the alternative, Plaintiffs argue that the complaint adequately alleges that the Defendants recklessly ignored Tenfold's problems with the OFI, Utica, and Nielsen projects when making the on time guarantee statements. (Pls.' Opp'n at 25–26). The standard for recklessness in the securities context is "conduct which is 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Novak v. Kasaks,* 216 F.3d 300, 308 (2nd Cir.) (citations omitted), *cert. denied,* 531 U.S. 1012, 121 S.Ct. 567, 148 L.Ed.2d 486 (2000).

The allegations in the complaint, as outlined above, do not show that it was highly unreasonable for Defendants to make the on time guarantee statements. It was not highly unreasonable for Defendants to believe that they could complete Tenfold's contracts on time. Tenfold had finished certain contracts on time in the past and had received extensions on the allegedly late contracts. Moreover, Defendants took steps to warn investors of negative business possibilities and events. The prospectus specifically warned that Tenfold's applications could contain defects or other limitations subjecting it to liability and loss of goodwill, that its applications had not yet been tested for systems requiring a large number of users which could result in a decrease in its growth and market share, and that it could fail to meet performance guarantees, possibly resulting in losses on projects. (Ex. A at 8–9, attached to Request for Judicial Notice [3]). When a customer did repudiate its contract or sue, Tenfold promptly disclosed the problem. This was not reckless behavior.

The allegations concerning the Defendants' motive and opportunity to engage in fraudulent conduct are insufficient to establish scienter. The Tenth Circuit specifically addressed the question of whether allegations of motive and opportunity satisfy the requirements for pleading scienter under the Reform Act. The court concluded that: "courts must look to the totality of the pleadings to determine whether the plaintiffs' allegations permit a strong inference of fraudulent intent. Allegations of motive and opportunity may be important to that totality, but are typically not sufficient in themselves to establish a 'strong inference' of scienter." *Fleming,* 264 F.3d at 1262. Moreover, the court cautioned that "[w]hen reviewing a plaintiff's allegations of scienter under the [Reform Act], a court should therefore examine the plaintiff's allegations in their entirety, without regard to whether those allegations fall into defined, formalistic categories such as 'motive and opportunity,' and determine whether the plaintiffs' allegations, taken as a whole, give rise to a strong inference of scienter." *Id.* at 1263.

When the allegations of the complaint are viewed as a whole, the allegations concerning motive and opportunity are not sufficient to give rise to a strong inference that Defendants acted with the requisite mental state. Because the complaint fails to plead a strong inference of scienter and

---

**2.** This discussion does not reach whether the on time statements were materially misleading, and, as such, does not reach Defendants' bespeaks caution argument.

**3.** Plaintiffs did not object at oral argument to the court using the information contained within the request for judicial admission for the limited purpose that the statements contained therein were made. The Tenth Circuit, in *Fleming,* recognized that under certain circumstances, a court may take judicial notice of matters outside the pleadings when considering a motion to dismiss. 264 F.3d at 1251 n. 4.

the issue of scienter is dispositive, the court does not reach the material misrepresentation issue.

### 2. Technology Guarantee

Plaintiffs allege that Defendants knowingly overstated the capabilities of Tenfold's technology. To establish scienter, Plaintiffs allege that because of Defendants' position in the company and its performance on the Nielsen, OFI and Utica contracts, Defendants knowingly misstated the technological capabilities of Tenfold and knew that its technological guarantee was likely to mislead investors. However, for the same reasons discussed above, these allegations are not sufficient to establish scienter.

### 3. Improper Revenue Recognition

Plaintiffs allege that Defendants improperly recognized income in violation of generally accepted accounting procedures ("GAAP"). In *Fleming,* the Tenth Circuit addressed this issue: " '[a]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim.' Only where such allegations are coupled with evidence that the violations or irregularities were the result of defendants' fraudulent intent to mislead investors may they be sufficient to state a claim." 264 F.3d at 1261 (quoting *Novak,* 216 F.3d at 309). Here, Plaintiffs allege that Defendants knew that Tenfold could not complete its contracts, so that their recognition of revenue under AICAP's Statement of Position 97–2 and 81–1 was improper. (*See* Compl. at ¶ 79). But, as discussed above, the allegations do not create a strong inference that the individual Defendants knew that Tenfold could not complete its contracts.

### C. *Section 11 and 12(a) Claims*

Defendants argue that: (1) Rule 9(b) should apply to Plaintiffs' claims brought under § 11 and § 12(a)(2) of the Securities Act of 1933; and that (2) under Rule 9(b) or, in the alternative, Rule 8, the complaint fails to state either a § 11 or § 12(a)(2) claim. The court first addresses the applicable standard of pleading.

### 1. Pleading Standard

The Tenth Circuit has not made a definitive statement on the applicability of Rule 9(b) to § 11 or § 12(a)(2) claims. However, the Tenth Circuit has cited *Shapiro v. UJB Financial Corp.,* 964 F.2d 272 (3rd Cir.), *cert. denied,* 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992), with approval. *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1251–52 (10th Cir.1997). The court proceeds with its analysis under the assumption that *Shapiro* applies.

In *Shapiro,* the court held that Rule 9(b)'s particularity requirements may be triggered by a § 11 or § 12(a)(2) claim grounded in fraud, even though either claim may be plead without alleging fraud. 964 F.2d at 287–89. The *Shapiro* court concluded Rule 9(b) applied, because the claim at issue did not allege negligence. *Id.* The question for this court, therefore, is whether the § 11 or § 12(a)(2) claims plead a claim for negligence. *See Schwartz,* 124 F.3d at 1251–52 (holding that because the court could construct a claim for negligence, Rule 8 applied); *In re Consumers Power Co. Sec. Litig.,* 105 F.R.D. 583, 594 (E.D.Mich.1985).

The complaint alleges negligence in both the § 11 and § 12(a) claims. For the § 11 claim, the complaint alleges that the individual defendants "did not make a reasonable investigation or possess reasonable grounds for the belief that the statements ... were true", (Compl. at ¶ 202), and that "[a]s a direct and proximate result of defendants' acts ..., the plaintiffs and the Class suffered substantial damage." (*Id.* at ¶ 203). For the § 12(a) claim, the complaint alleges that "the defendants were

obligated to make a reasonable and diligent investigation of the written and oral statements ... to insure that such statements were true." (*Id.* at ¶ 211). Therefore, *Shapiro* is factually distinct and Rule 8 applies.

### 2. Section 11

■ Section 11 imposes strict liability against the issuer of securities where a registration statement contains material misstatements or omits material facts. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983); *Schaffer*, 29 F.Supp.2d at 1220. Plaintiffs allege that Tenfold's prospectus was materially false and misleading because Defendants knew that Tenfold would be unable to complete its contractual obligations. (*Id.* at ¶ 200). However, Defendants argue that the "bespeaks caution" doctrine renders the complaint's allegations insufficient to state a § 11 claim.

The Tenth Circuit explained the "bespeaks caution" doctrine:

> Forward-looking representations are ... considered immaterial when the defendant has provided the investing public with sufficiently specific risk disclosures or other cautionary statements concerning the subject matter of the statements at issue to nullify any potentially misleading effect.... However, not every risk disclosure will be sufficient to immunize statements relating to the disclosure; rather, "the cautionary statements must be substantive and tailored to the specific future projections, estimates or opinions ... which the plaintiffs challenge." At bottom, the "bespeaks caution" doctrine stands for the "unremarkable proposition that statements must be analyzed in context" when determining whether or not they are materially misleading.

*Grossman*, 120 F.3d at 1120 (citations omitted). Here, both the on time and

technology guarantee statements are forward looking representations concerning Tenfold's projected performance on future contracts. The relevant inquiry, then, is whether Tenfold's prospectus contained sufficient risk disclosures to immunize statements relating to the disclosure.

The prospectus disclosed that Tenfold had experienced delays in completing projects in the past and might experience similar delays in the future. (Ex. A at 7, attached to Request for Judicial Notice). The prospectus also disclosed that Tenfold had not extensively tested its products to determine the extent to which they were scalable. (*Id.* at 8). These risk disclosures are substantive and tailored to the specific future projection of Tenfold's ability to complete projects on time, on target, and on budget. Reading the prospectus as a whole, neither the on time nor the technological guarantee statements could have mislead a reasonable investor.

### 3. Section 12(a)(2)

■ Section 12(a)(2) of the Securities Act of 1933 provides that a person who "offers or sells" newly issued securities "by means of a prospectus" that misrepresents or omits a material fact is "liable to the person purchasing such security from him." 15 U.S.C. § 77l (1981). Accordingly, the courts interpret § 12(a)(2) as having an express privity requirement, giving a cause of action only to individuals who purchase securities directly from a person who sells the securities by means of a prospectus. *Joseph v. Wiles*, 223 F.3d 1155, 1161 (10th Cir.2000). The definition of a seller of securities extends " 'to the person who successfully solicits the purchase [of securities], motivated at least in part by a desire to serve his own financial interests or those of the securities owner.' " *Maher v. Durango Metals, Inc.*, 144 F.3d 1302 (10th Cir.1998) (quoting *Pinter*

*v. Dahl,* 486 U.S. 622, 647, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988)).[4]

 Plaintiffs allege only that defendants "solicited and/or were a substantial factor in the purchase" by Plaintiffs of common stock. (Compl. at ¶ 210). However, liability does not extend to someone who was merely a substantial factor in a stock sale. *Pinter,* 486 U.S. at 651, 108 S.Ct. 2063. Rather, " '[a]n allegation of direct and active participation in the solicitation of the immediate sale is necessary for solicitation liability.' " *Maher,* 144 F.3d at 1307 (citations omitted). Accordingly, Plaintiffs must allege facts that support the conclusion that the individual Defendants solicited the purchases and were motivated by a desire to serve their own financial interests. *See Maher,* 144 F.3d at 1307 (citing *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1216 (1st Cir.1996) ("bald and factually unsupported allegation that [the defendants] 'solicited' the plaintiffs' securities purchases is not, standing alone, sufficient")). Here, the complaint is devoid of allegations that support its conclusory statement that Defendants "solicited ... the purchase." Such a statement is insufficient to state a § 12(a)(2) claim.

## D. *Individual Liability*

To state a claim for control person liability, "the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person." *Fleming,* 264 F.3d at 1270. As discussed above, Plaintiffs have failed to state a claim in its § 10(b), § 11, or § 12(a) pleading. Thus, there is no primary violation of the securities laws.[5]

---

4. *Pinter* discussed 12(a)(1) liability, but applies equally to § 12(a)(2). *Maher,* 144 F.3d at 1307 n. 10.

### ORDER

For the above stated reasons, the Defendants' motion to dismiss is GRANTED. Plaintiffs have leave to file a motion to file a second amended complaint.

---

5. Because Plaintiffs failed to state a claim for all Defendants under its § 10(b), § 11, and § 12(a) claims, the court need not discuss individual liability for these claims.