PRECISION VASCULAR SYSTEMS,
INC., et al., Plaintiffs,

v.

SARCOS L.C., et al., Defendants.

No. 2:01–CV–564C.

United States District Court,
D. Utah,
Central Division.

April 12, 2002.

Alan L. Sullivan, Michael D. Zimmerman, Todd M. Shaughnessy, Kimberly A. Havlik, Snell & Wilmer LLP, George S. Adondakis, Akiko Kawamura, Hobbs Adondakis & Olson LC, Salt Lake City, UT, Daniel A. Mullen, Kenneth L. Cage, Charles R. Work, McDermott Will & Emery, Washington, DC, for Plaintiffs.

Richard D. Burbidge, Stephen B. Mitchell, Jason D. Boren, Jefferson W. Gross, John Ryan Mitchell, Burbidge & Mitchell, Salt Lake City, UT, Robert L. Stolebarger, Greggory J. Savagee, Eric G. Maxfield, Holme Roberts & Owen LLP, Salt Lake City, UT, for Defendants.

### ORDER

CAMPBELL, District Judge.

This is a securities suit brought by Precision Vascular Systems, Inc. ("PVS") and certain individual investors of PVS against Sarcos, L.C., and affiliated Sarcos entities (collectively referred to as "Sarcos") and certain individuals holding senior management positions in both PVS and Sarcos.[1]

Plaintiffs allege that in June 1998 Defendants made materially false misrepresentations in three interrelated agreements (collectively referred to as "Agreements") to induce PVS to transfer over 5 million PVS shares to Sarcos in violation of § 10(b) and § 20(a) of the 1934 Securities and Exchange Act, Utah securities law, and Utah common law. The action comes before the court on Defendants' motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Plaintiffs' amended complaint ("complaint") fails to state a claim.[2] For the reasons discussed below, Defendants' motions are granted in part and denied in part with leave given to Plaintiffs to file a motion to file a second amended complaint.

### *Discussion*

A. *Standard of Review*

For purposes of a 12(b)(6) motion, the court generally confines itself to the text of the complaint and accepts all well-plead facts as true. *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1251 (10th Cir.1997). Dismissal pursuant to Rule 12(b)(6) is appropriate only when it appears that plaintiffs can prove no set of facts in support of the claims asserted. *Grossman v. Novell, Inc.,* 120 F.3d 1112, 1118 (10th Cir.1997).

In the securities fraud context, a plaintiff is held to a strict standard of pleading. *Id.* at 1124. Traditionally, plaintiffs alleging securities fraud had to meet the

---

1. The individual Defendants are:
 a. Dr. Stephen C. Jacobsen ("Jacobsen") founded PVS in 1996 and was its CEO and Chairman of the Board. Jacobsen was also the director and president of Sarcos.
 b. Dr. Fraser M. Smith ("Smith") served as a director and vice president of PVS. Smith also served as a director and executive vice-president of Sarcos.
 c. J. Gordon Hansen ("Hansen") served as PVS' corporate counsel and was an officer of the company. Hansen was not an officer of Sarcos, but represented Jacobsen, Smith, and Sarcos as clients. Collectively, the individual Defendants and Sarcos entities are referred to as "Defendants."

2. Sarcos, Jacobsen and Smith filed one motion to dismiss challenging only Plaintiffs' fraud-based and accounting and disgorgement claims. Hansen filed a separate motion to dismiss challenging all claims against him.

heightened pleading requirement of Rule 9(b). Under Rule 9(b), a plaintiff was required to "set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." *Id.*

In 1995, Congress passed the Private Securities Litigation Reform Act ("Reform Act") in an effort to heighten Rule 9(b)'s pleading standards. "The Reform Act imposes even more rigorous pleading requirements on plaintiffs alleging fraud in the securities context." *Karacand v. Edwards*, 53 F.Supp.2d 1236, 1242 (D.Utah 1999); *see also In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 983–84 (9th Cir.1999); *Caprin v. Simon Transp. Servs.*, 112 F.Supp.2d 1251, 1255 (D.Utah 2000); *Schaffer v. Evolving Sys., Inc.*, 29 F.Supp.2d 1213, 1219 (D.Colo.1998).

■ After the Reform Act, a securities complaint must first "specify each statement alleged to have been misleading" as well as "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1); *see also Karacand*, 53 F.Supp.2d at 1242; *Caprin*, 112 F.Supp.2d at 1255. "Mere conclusory allegations of falsity are insufficient." *Grossman*, 120 F.3d at 1124.

■ Second, the plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant[s] acted with the required state of mind" and must do so with respect to each act or omission alleged to be a violation of the securities laws. 15 U.S.C. § 78u–4(b)(2); *see also Karacand*, 53 F.Supp.2d at 1242; *Caprin*, 112 F.Supp.2d at 1255. To establish that a defendant acted with the requisite state of mind, or scienter, the plaintiff must demonstrate that: "(1) the defendant knew of the potentially material fact, and [that] (2) the defendant knew that failure to reveal the potentially material fact

would likely mislead investors." *City of Philadelphia v. Fleming Cos., Inc.*, 264 F.3d 1245, 1261 (10th Cir.2001). Recklessness can satisfy the scienter requirement for section 10(b). *Id.*

Third, for allegations made on information and belief, the complaint "shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1); *see also Karacand*, 53 F.Supp.2d at 1242; *Caprin*, 112 F.Supp.2d at 1255. "The Reform Act mandates dismissal, upon motion of the defendant, if the complaint fails to meet these requirements." *Karacand*, 53 F.Supp.2d at 1242; *see also* 15 U.S.C. § 78u–4(b)(3)(A).

### B. *Section 10(b) Claim*

■ To state a claim under § 10(b) of the Securities and Exchange Act of 1934, a plaintiff must allege:

(1) a misleading statement or omission of a material fact; (2) made in connection with the purchase or sale of securities; (3) with intent to defraud or recklessness; (4) reliance; and (5) damages.

*Grossman*, 120 F.3d at 1118; *see also Karacand*, 53 F.Supp.2d at 1242.

The complaint alleges six categories of materially misleading statements: (1) fraudulent licensing of the Micromachine; (2) fields of use bait and switch; (3) the transfer of non-existent intellectual property; (4) fraudulent concealment of an ongoing criminal investigation; (5) fraudulent overcharges; and (6) misrepresentations of the demand for PVS shares.

### 1. Fraudulent Licensing of the Micromachine

■ The complaint alleges that:

[I]n 1996, Clark Davis, a PVS consultant, invented the Micromachine with the assistance of John Lippert, a PVS officer and employee, while their salaries

were being paid by PVS. Jacobsen listed himself as an inventor on the patent application, and Smith caused the resulting patent to be assigned to [Sarcos] instead of PVS. The [i]ndividual Defendants passed off the Micromachine as [Sarcos'] intellectual property when they transmitted drafts and final versions of the Agreements to the [i]ndividual [i]nvestors and their attorneys ... and then licensed it back to PVS.

(Compl. at ¶ 48).

To establish scienter, the complaint alleges that Jacobsen, Smith, and Sarcos knew that their representations were false at the time because Jacobsen listed himself as an inventor on the patent application, and Smith caused the resulting patent to be assigned to Sarcos instead of PVS. (*Id.*) However, the complaint fails to allege facts that support the inference that Jacobsen knew it was improper for him to list himself as an inventor in 1996 or that Jacobsen knew Sarcos did not really hold the rights to the Micromachine in 1998. Merely incorrectly listing himself as the inventor does not demonstrate that Jacobsen's alleged error was made with knowledge of its wrongfulness. As to Smith, the complaint fails to allege that Smith knew that Jacobsen was wrongfully listing himself as an inventor. And merely causing an assignment from the registered patent holder to Sarcos does not establish that Smith knew that PVS should have held the rights to the Micromachine. Accordingly, the above allegations do not give rise to a " 'strong inference' that Defendants engaged in either knowing or reckless misconduct...." *Fleming*, 264 F.3d at 1263.

### 2. Fields of Use Bait and Switch

■ The complaint alleges that:

Jacobsen and Hansen unequivocally represented to Dr. Dorros and Dr. Stertzer on numerous occasions, and through them to all the [i]ndividual [i]nvestors,

that [Sarcos] had assigned to PVS all rights to medical applications of various technologies.... Jacobsen also personally represented to Dr. Dorros and Dr. Stertzer, beginning on or about April 23, 1998[,] and continuing on several occasions thereafter, ... that PVS owned or had rights to all "Sarcos" technology related to human medical uses, that PVS was developing products using that technology for existing medical applications....

In a facsimile dated June 4, 1998, Jacobsen and Hansen represented to Dr. Stertzer's attorneys that [Sarcos] was assigning to PVS technologies for applications in the following "Fields of Use":

1. Intravascular human medical applications including:

 a. Cardiology

 b. Peripheral Radiology

 c. Neuroradiology

2. Human urology and gynecology, including reproductive health; and,

3. Human gastroenterology....

Rather than negotiate in good faith to exclude those areas from the Fields of Use in Agreements, Smith conspired with Jacobsen to secretly insert the exclusions to avoid detection. On June 11, 1998, Smith and Jacobsen discussed their strategy to insert exclusions into an exhibit, rather than in the text of the Agreements, to avoid setting off alarms....

Smith and Jacobsen conspired with Hansen to accomplish this scheme. Jacobsen and Smith knew that Hansen represented in a June 23, 1998 letter to Dr. Stertzer's attorneys that he was enclosing final copies of the Agreements to be signed as enclosed. Hansen's June 23, 1998 letter was copied to Jacobsen and Smith. Neither Hansen's June 23, 1998 letter nor the enclosed Agreements

**1188**

made reference to any exclusions from the Fields of Use. Only after the [i]ndividual [i]nvestors had signed on the dotted line ..., Smith, Jacobsen, and/or Hansen inserted the following exclusions to the Fields of Use.... These exclusions appear on a single page buried among approximately 175 pages of transaction documents that were not sent to the [i]ndividual [i]nvestors or their attorneys until months after June 23, 1998....

(Compl. at ¶ 26–30).

In simple terms, the complaint alleges that Defendants made material misrepresentations by representing that Sarcos was assigning PVS all of its intellectual property in intravascular human medical applications, human urology and gynecology, and human gastroenterology. Allegedly, these statements were false because Defendants secretly inserted field of use exclusions in those three areas—an alleged "bait and switch."

The complaint, however, is devoid of support for these allegations. The complaint does not detail when Jacobsen and Hansen allegedly made verbal misrepresentations or the content of those representations. The complaint alleges a conspiracy to secretly insert additions to the field of use exclusions but does not provide specifics about who inserted the exclusions at a later date. Nor does the complaint allege underlying facts that support the conclusion that the field of use exclusions were added after the Plaintiffs reviewed and signed the document.

The complaint also fails to plead a strong inference of scienter. The complaint alleges only that Smith and Jacobsen conspired with Hansen to accomplish this scheme, that Jacobsen actively engaged in efforts to prevent the discovery of the scheme, and that Smith devised the scheme. Such conclusory allegations cannot satisfy the strictures of Rule 9(b),

much less the Reform Act. *See Karacand,* 53 F.Supp.2d at 1241.

3. Transfer of Non–Existent Intellectual Property

■ The complaint alleges that:

Jacobsen and Hansen represented to the [i]ndividual [i]nvestors on numerous occasions that [Sarcos] was licensing and/or assigning to PVS rights to at least 26 different technologies that were either patented or in the process of being patented. For example, Jacobsen and Hansen represented that [Sarcos] was assigning to PVS the following six technologies in a fax to attorneys for Dr. Stertzer dated June 4, 1998.... Jacobsen and Hansen ... further embellished [this representation] by adding ... invention disclosure file numbers ... to descriptions of the aforementioned six technologies....

Jacobsen and Hansen's representations concerning the aforementioned six technologies were false because the purportedly assigned invention disclosure files were devoid of any patents, invention disclosures, inventor notes, or substance. Jacobsen knew at the time these statements were false and misleading because he made up names for intellectual property that did not exist, embellished descriptions of the intellectual property, and directed the addition of invention disclosure file numbers.

(Compl. at ¶ 22–24).

■ The complaint alleges knowledge only as to Jacobsen. Yet, even this allegation is too conclusory. There are no allegations that support the conclusion that Jacobsen himself labeled the intellectual property, knew the contents of the files, or directed the alleged falsification of intellectual property. A bald assertion of knowledge does not establish a strong inference of scienter.

### 4. Fraudulent Concealment of Ongoing Criminal Investigation

The complaint alleges that:

On or after June 22, 1998, Jacobsen, Smith and Hansen caused [Sarcos] to represent to the [i]ndividual [i]nvestors in documents attached to the Stock Purchase Agreement that Sarcos was not a party to, or threatened to be made a party to, any action or investigation of any administrative agency of any federal, state, or local jurisdiction. These representations were false because in January 1996 the U.S. Department of the Navy Naval Criminal Investigative Services Fraud Unit ("NCIS") served a Subpoena Duces Tecum on Sarcos Group L.P. and Sarcos Research Corporation.... From 1994 through at least 1999, Jacobsen, Smith, and Hansen held key management positions as officers and directors of Sarcos.... Jacobsen, Smith, and Hansen knew about the criminal investigation as of June 1998 by virtue of their management positions and because it was frequently the subject of discussion at [Sarcos] board meetings they attended.

(Compl. at ¶ 34–37).

Plaintiffs base their claim that Defendants possessed the requisite scienter on the Defendants' positions in management. But the Tenth Circuit has made clear that this is not sufficient: "[a]llegations that a securities fraud defendant, because of his position within the company, 'must have known' a statement was false or misleading are 'precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny.' " *Fleming,* 264 F.3d at 1264 (citing *Maldonado v. Dominguez,* 137 F.3d 1, 10 (1st Cir.1998)). Without substantive allegations supporting the conclusion that Defendants "must have known," the complaint fails to plead a strong inference of scienter.

### 5. Fraudulent Sarcos Overcharges

The complaint alleges that:

[O]n numerous occasions, Jacobsen, Smith, and Hansen ... represented that there would be only nominal charges for PVS's use of [Sarcos] office space and certain personnel. On June 3, 1998, Hansen sent attorneys for Dr. Stertzer a disclosure schedule representing that PVS pays [Sarcos] $22,300 per month for various services and facilities.... Jacobsen repeated this representation on June 9, 1998 in a fax to attorneys for Dr. Stertzer, stating that PVS pays [Sarcos] fees that have been as high as $22,300 per month in the past. Jacobsen and Hansen repeated this representation again to all the [i]ndividual [i]nvestors on or after June 22, 1998 in Disclosure Schedule 3 to the Stock Purchase Agreement. These representations were misleading to the [i]ndividual [i]nvestors at the time because Jacobsen, Smith and Hansen intended to dramatically increase the amount of [Sarcos'] charges to PVS. Shortly after the [i]ndividual [i]nvestors paid $7.5 million for their PVS shares, Jacobsen and Smith caused monthly charges to skyrocket ... in part by overcharging and double charging PVS.

(Compl. at ¶ 32). Under Rule 9(b), a complaint must "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz,* 124 F.3d at 1252 (citations and quotation omitted). Here, the complaint alleges only the consequences of the alleged overcharges, that is skyrocketing monthly charges. It utterly fails to allege the specifics of when Sarcos overcharged specific items, what specific items were overcharged, or even how the items were overcharged. Where allegations are based on billing documents, the complaint must

provide some specificity as to what charges are false and why. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d at 985 ("We would expect that a proper complaint which purports to rely on the existence of internal reports would contain at least some specifics from those reports …"). Such conclusory allegations do not satisfy the heightened pleading burdens of the Reform Act.

### 6. Misrepresentations Concerning Demand for PVS Shares

 The complaint alleges that:

Jacobsen also represented to Dr. Stertzer that the [i]ndividual [i]nvestors needed to act quickly and invest in PVS or else Jacobsen would allow other parties to invest in PVS. Jacobsen also said to Dr. Dorros that another investor already had paid PVS $800,000 simply to look at PVS's books. These representations were false because PVS only received half of the $800,00—[Sarcos] received the other half—pursuant to a standstill agreement with a company that had already decided not to acquire or invest in PVS. Jacobsen knew at the time he made this representation to Dr. Dorros and Dr. Stertzer that it was false because he has signed the standstill agreement and negotiated with the company that had already decided not to acquire or invest in PVS.

(Compl. at ¶ 33).

Again, these allegations lack the particularity required by the Reform Act. The identity of the other company that decided not to acquire PVS is not given. Nor does the complaint allege when the unidentified company made its decision not to acquire PVS. And, most importantly, the complaint does not demonstrate that at the time of Jacobsen's representation to Dr. Dorros and Dr. Stertzer, the other company had already decided not to acquire or invest in PVS, beyond a conclusory statement. Therefore, there is nothing that supports a strong inference that Jacobsen's statements were false or that he knew they were false.[3]

### C. Section 20(a)

 Section 20(a) provides that a person who "directly or indirectly" controls any person which commits a violation of the securities laws may be held jointly and severally liable with the primary violator. 15 U.S.C. § 78t(a). To state a claim for control person liability, "the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person." *Fleming*, 264 F.3d at 1270. Here, Plaintiffs have failed to state a claim under its § 10(b) claim. Thus, there is no primary violation of the securities laws, and the complaint fails to state a § 20(a) claim.

### D. Utah Securities Law

————The anti-fraud provisions of the Utah Uniform Securities Act mirror the language of § 10(b). *Compare* Utah Code Ann. § 61–1–1 *with* 15 U.S.C. § 78j(b). To sufficiently plead violations of the Utah Uniform Securities Act, Plaintiffs must allege that their securities fraud claim with particularity pursuant to Rule 9(b). But, as discussed above, the allegations of the complaint do not meet the strictures of the Reform Act. For those very same reasons, the complaint's allegations fail to satisfy the lesser standard of Rule 9(b).

### E. Common Law Fraud

————The complaint also alleges claims for fraudulent misrepresentation

---

**3.** Defendant Hansen also argues that the Plaintiffs' § 10(b) claim is barred by the statute of limitations. Because the court finds that the claims were not properly pled, it does not reach the merits of this claim.

and fraudulent concealment against all Defendants. To support these claims, the complaint relies upon the above-discussed six categories of alleged misrepresentations or omissions. The court must determine whether the above-discussed allegations, even though they do not state a federal or state securities law claim, adequately allege the elements of a common law fraud claim.

■■■■■ The elements of fraudulent misrepresentation are: (1) a representation; (2) concerning a presently existing material fact; (3) which is false; (4) which the representor either (a) knew to be false, or (b) made recklessly; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did rely in fact upon it; (8) and was thereby induced to act; (9) to his or her injury and damage. *Crookston v. Fire Ins. Exch.*, 817 P.2d 789, 800 (Utah 1991). The elements of fraudulent concealment are: (1) the omission of a material fact when there is a duty to disclose, (2) for the purpose of inducing action on the part of the other party, (3) with actual, justifiable reliance, (4) resulting in damage to that party. *Taylor v. Gasor, Inc.*, 607 P.2d 293, 294 (Utah 1980). Both the fraudulent misstatement and concealment causes of action require that a complaint plead material misrepresentation and scienter with particularity. *See Crookston* 817 P.2d at 800; *Taylor*, 607 P.2d at 294. As discussed above, Plaintiffs' allegations lack particularity throughout their complaint, are generally conclusory, and fail to establish that Defendants acted with scienter. Consequently, Plaintiffs fail to state a claim for either fraudulent misrepresentation or fraudulent concealment.

F. *Breach of Fiduciary Duty*

The complaint alleges that:

> Hansen, as corporate secretary and attorney for PVS, owed fiduciary duties of good faith, fair dealing, loyalty, honesty, fidelity, disclosure, and due care to PVS at all times relevant for purposes of this action. At the same time, Hansen served as attorney for Sarcos.... Hansen failed to make full disclosure to PVS of conflicts of interest implicated by his simultaneous representation of these entities. PVS never consented to waive any conflict of interest.

(Compl. at ¶ 86). Hansen argues that the breach of fiduciary duty claim fails to state a claim because: (1) the claim is not plead with particularity pursuant to Rule 9(b); (2) PVS consented to the alleged conflicts of interest; and (3) Hansen owed no fiduciary duty as corporate secretary.

■■■■ Generally, "a plaintiff pleading a claim for breach of fiduciary duty need only comply with Rule 8 . . ., not Rule 9(b), because this claim is not based on fraud." *Sheldon v. Vermonty*, 31 F.Supp.2d 1287, 1295 (D.Kan.1998) (citing Fed.R.Civ.Proc. 9(b)); *see also Concha v. London*, 62 F.3d 1493, 1503 (9th Cir.1995), *cert. dismissed*, 517 U.S. 1183, 116 S.Ct. 1710, 134 L.Ed.2d 772 (1996) ("Rule 9(b) is applicable where the plaintiffs allege fraud, but not where they simply allege breaches of ERISA fiduciary duties"). However, a claim for breach of fiduciary duty must be pled with particularity where the alleged breach itself is a scheme to defraud. *Lochhead v. Alacano*, 662 F.Supp. 230, 234 (D.Utah 1987) (citing *Thornton v. Evans*, 692 F.2d 1064, 1083 (7th Cir.1982); *Robison v. Caster*, 356 F.2d 924, 925 (7th Cir.1966)). Accordingly, the threshold inquiry is whether the Plaintiffs' breach of fiduciary duty claim is based in fraud or negligence.

■■■■ A claim for negligence consists of the familiar elements of duty, breach of care, proximate cause, and damages. *See Vogel v. Foth and Van Dyke Assocs., Inc.,*

266 F.3d 838, 840–41 (8th Cir.2001). Plaintiffs allege in their complaint that "Jacobsen, Smith, and Hansen['s] conduct constitutes gross negligence, willful misconduct, or intentional infliction of harm on Plaintiffs." (Compl. at ¶ 89). The pleadings allege facts to support these theories based on negligence. The complaint pleads that Hansen owed a duty to PVS as an officer. (Compl. at ¶ 86). The complaint pleads that Hansen breached his fiduciary duties because his simultaneous representation of PVS and Sarcos caused a conflict of interest. (*Id.* at ¶ 86, 87, 90). And, the complaint pleads that the breach caused a harm by causing PVS to enter into an agreement with "draconian terms." (Compl. at ¶ 91; Pls.' Opp'n at 11). These allegations plead a claim grounded in negligence, not fraud. Therefore, Plaintiffs must plead only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.Proc. 8(a).

■■■■■ A fiduciary duty carries with it an obligation to deal fairly and openly with those to whom the duty is owed. *Nash v. Craigco, Inc.,* 585 P.2d 775 (Utah 1978). As to corporate directors and officers, the officer owes a fiduciary to the corporation itself and to the shareholders only collectively. *Lochhead,* 662 F.Supp. at 232. A suit is derivative if the plaintiff seeks to enforce any right which belongs to the corporation, while an the action is primary if the right belongs to the plaintiff severally or if the defendant's fraud affected him directly. *Richardson v. Arizona Fuels Corp.,* 614 P.2d 636, 639 (Utah 1980) Here, the complaint alleges that Hansen's breach of his fiduciary increased PVS' operating costs, decreased the value of PVS and its assets, and stripped PVS of valuable corporate opportunities. (Compl. at ¶ 91). These allegations seek to enforce the rights of the corporation. *Lochhead,* 662 F.Supp. at 233 ("Courts have uniformly held that misappropriation of assets injures the corporation primarily and indi-

vidual shareholders only derivatively"). Although the individual investors seek damages, only PVS may recover from this breach of fiduciary duty claim.

■■■■ The complaint alleges that Hansen was the corporate secretary for PVS. (Compl. at ¶ 86). As an officer of PVS, Hansen owed a duty to PVS. With the allegations that Hansen simultaneously represented both PVS and Sarcos and that unfair agreements resulted from that representation, the allegations are sufficient to establish a claim under Rule 8.

■■■■ Hansen argues that even under the Rule 8 standard, Plaintiffs fail to state a claim because Jacobsen, as Chairman and CEO of Sarcos and PVS, engaged him to act as attorney for both, and this dual action was sufficient to waive any conflicts of interest. (Hansen Brief at 30). However, the mere fact that other officers ratify a fraud perpetuated by one of the officers does not absolve that officer from liability to the corporation. WILLIAM M. FLETCHER, 3 FLETCHER CYC CORP § 998 (perm. ed.1994). Therefore, Jacobsen's actions cannot excuse Hansen's actions as an officer.

■■■■ Finally, Hansen argues that Plaintiffs fail to state a claim because his duties under the Bylaws were limited to those delegated by the board chairman and the chief executive officer. Hansen's argument regarding his precise duty as a corporate secretary at best creates an issue of fact that is not appropriate for resolution on a motion to dismiss. Fed.R.Civ.Proc. 12(b)(6).

G. *Accounting and Disgorgement*

■■■ _____Plaintiffs argue that because of its allegations of fraud and negligence as discussed above and because the Defendants' conduct was "deliberate, malicious, tortious, and illegal," (Compl. at

¶ 96), Defendants must "account for and disgorge all salary, bonuses, benefits, and/or profits" earned by them. (Compl. at ¶ 97). Defendants argue that claims for accounting and disgorgement are not separate causes of action under Utah law citing *Richardson*, 614 P.2d 636. Plaintiffs argue that, contrary to Defendants' representations, *Richardson* recognizes an accounting and disgorgement cause of action. The court in *Richardson* stated: "The amended complaint states twelve causes of action, the first eight of which allege some fraudulent appropriation of or scheme to appropriate Major's assets by defendants. These causes of action seek to require the defendants to disgorge and return to Major the assets wrongfully obtained." *Id.* at 639. Clearly, accounting and disgorgement are remedies under Utah law, not separate causes of action.

### H. *Conversion/Declaratory Judgment*

The complaint alleges a cause of action for conversion, (Compl. at ¶¶ 92–94), and seeks a declaratory judgment on whether the intellectual property rights belong to PVS, whether the Sarcos employment agreements are invalid, and whether the fields of use exclusions are part of the agreements as to all Defendants. (Compl. at ¶¶ 99–110). These allegations fail to state a claim against Hansen.[4]

■■■ The tort of conversion requires that defendant possess "an intent to exercise dominion or control over goods inconsistent with the owner's rights." *Allred v. Hinkley*, 8 Utah 2d 73, 328 P.2d 726, 728 (1958). The conversion claim for relief alleges generally that "Defendants intentionally exercise control over intellectual property and other assets owned by Plaintiffs." (*Id.* at ¶ 93). Because Hansen has no ownership in or control over the contested intellectual property, the conversion

allegations fail to state a claim against Hansen.

■■■ For a declaratory judgment to be ripe, there must be "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). The declaratory judgment claims for relief allege that Plaintiffs and Defendants dispute the ownership or validity of certain property or agreements. (*Id.* at ¶¶ 100, 104, 108). Here, Hansen does not have an legal interest in the issues raised by Plaintiffs. Therefore, the declaratory judgment claims fail to state a claim against Hansen.

### ORDER

For the above stated reasons, the Defendants motions for summary judgment are GRANTED in part and DENIED in part:

- Plaintiffs' First Cause of Action pursuant to § 10(b) is dismissed as to all Defendants.
- Plaintiffs' Second Cause of Action pursuant to § 20(a) is dismissed as to all Defendants.
- Plaintiffs' Third Cause of Action pursuant to Utah's Uniform Securities Act is dismissed as to all Defendants.
- Plaintiffs' Fourth Cause of Action pursuant to Fraudulent Concealment is dismissed as to all Defendants.
- Plaintiffs' Fifth Cause of Action pursuant to Fraudulent Misrepresentation is dismissed as to all Defendants.
- Plaintiffs' Sixth Cause of Action pursuant to Breach of Fiduciary Duties states a claim as to all Defendants.

---

4. Plaintiffs do not argue that these claims for relief state a claim against Hansen; rather, they reassert their applicability as to the other Defendants.

- Plaintiffs' Seventh Cause of Action pursuant to Conversion is dismissed as to Defendant Hansen.
- Plaintiffs' Eight Cause of Action pursuant to Accounting and Disgorgement is dismissed as to all Defendants.
- Plaintiffs' Ninth Cause of Action pursuant to Declaratory Judgment—Intellectual Property Rights Belong to PVS—is dismissed as to Defendant Hansen.
- Plaintiffs' Tenth Cause of Action pursuant to Declaratory Judgment—Sarcos Employment Agreements Are Invalid—is dismissed as to Defendant Hansen.
- Plaintiffs' Eleventh Cause of Action pursuant to Declaratory Judgment—Field of Use Exclusions Not Part of Agreements—is dismissed as to Defendant Hansen.

Plaintiffs have leave to file a motion to file a second amended complaint.