ORDER
 

 DOTY, District Judge.
 

 This matter is before the court upon the joint motions of defendants to dismiss the actions
 
 [1]
 
 for failure to state a claim upon which relief may be granted. For the following reasons, defendants’ motions are granted in part and denied in part.
 

 BACKGROUND
 

 These actions stem from a drastic reduction in the market value of Xcel Energy, Inc. (“Xcel”) stock following Xcel’s disclosure of adverse information about its financial ties to its subsidiary, NRG Energy, and a Securities Exchange Commission (“SEC”) investigation of Xcel and its subsidiaries relating to alleged round-trip trading of energy.
 
 [2]
 
 Plaintiffs Gene Bar-day, Jr., Donald Newcome and Leonard Banks are all employees of an Xcel subsidiary. Barday individually, and Newcome and Banks jointly, filed suit naming Xcel, its directors and certain of its officers as defendants. Plaintiffs claim that their various retirement plans, which were invested entirely or in part in Xcel securities, suffered severe losses as result of the precipitous drop in Xcel share value. They allege defendants breached their fiduciary duties and violated the disclosure requirements of the Employee Retirement Income Security Act of 1974, (“ERISA”), 29 U.S.C. § 1001 et seq.
 

 
 *MCCXV
 
 I. The Parties
 

 Defendant Xcel is a Minnesota corporation based in Minneapolis, Minnesota that provides electricity and natural gas to residential and commercial customers in twelve western and midwestern states through its regulated utilities companies. Xcel is publicly traded on the New York Stock Exchange. The company administers employee benefit plans as defined by ERISA.
 
 See
 
 29 U.S.C. § 1002.
 

 Defendant Wayne H. Brunetti has at various times been chairman of the board of directors, president and chief executive officer of Xcel, as well as an officer and director of its subsidiaries New Century Energies and Public Service Company of Colorado (“PSCo”).
 

 Defendants Douglas W. Leatherdale, C. Coney Burgess, A. Barry Hirschfield, Margaret R. Preska, Allan L. Schuman and W. Thomas Stephens are directors of Xcel and members of the Xcel Finance Committee, which plaintiffs allege has authority over the plans in question.
 

 Defendants Giannantonio Ferrari, Albert F. Moreno, A. Patricia Sampson, Rodney E. Slifer, James J. Howard, David A. Christensen and Roger R. Hemminghaus are or were directors of Xcel at times relevant to the present litigation.
 

 Defendants Edward J McIntyre and David E. Ripka were chief financial officer and chief accounting officer, respectively, of Xcel during times relevant to the litigation.
 

 Plaintiff Barday is a Colorado resident and an employee of Xcel Subsidiary Public Service Company of Colorado (“PSCo”). Barday is a participant in the Xcel Energy 401(k) Savings Plan (“Xcel 401(k)”). Plaintiff Newcome is also a Colorado resident PSCo employee. He participates in the NCE Energy Employees’ Savings and Stock Ownership Plan for Bargaining Unit Employees and Former Non-Bargaining Unit Employees (“ESOP”). Plaintiff Banks resides in Colorado and is employed by PSCo as well. He is a participant in both the Xcel 401(k) and the ESOP plans.
 

 II. The Plans
 

 The plans at issue in this litigation are the Xcel 401(k) and the ESOP. Both plans are defined contribution plans and eligible individual account plans. As defined contribution plans, the plans provide an individual account for each plan participant based on that participant’s contributions and company matching contributions.
 
 See
 
 29 U.S.C. §§ 1002(34) and 1107(d)(3). Each of the plans includes an ESOP component and a non-ESOP component. An ESOP is an employee stock ownership plan that is designed to invest “primarily in qualifying employer securities.” 29 U.S.C. § 1107(d)(6). The non-ESOP components of the plans allow participants to contribute a portion of their pay to various investment funds, including an Xcel stock fund, on a pre-tax basis to provide for retirement. Participants choose the fund or funds in which their contributions are to be invested.
 

 Each plan also calls for the company to make matching contributions. Company contributions to the ESOPs are made in Xcel stock or cash to be invested in Xcel stock. Contributions to the non-ESOP component are either made in cash or company stock, if the employee has chosen that particular investment.
 

 The Xcel 401(k) plan identifies three plan fiduciaries: the company, an appointed committee and the plan trustee.
 
 [3]
 
 The ESOP plan identifies two fiduciaries: the company and the trustee. The plans identify the company as plan administrator.
 

 
 *MCCXVI
 
 III. The Dramatic Decline in Xcel Stock Value
 

 On July 25, 2002, Xcel released its second quarter results and made public for the first time the existence of cross default provisions closely tying its fortunes to its financially beleaguered subsidiary, NRG. Xcel stock suffered an immediate price drop of approximately thirty-six percent. Xcel ultimately took a loss of over $2 billion on its NRG investment. It was also forced to renegotiate its own credit facilities on less favorable terms, eventually paying off and closing one of the $400 million credit agreements. Xcel’s directors also cut the annual dividend in half.
 

 Immediately after Xcel revealed the existence and possible impact of the cross default provisions, it informed analysts that the SEC and the Commodities Futures Trading Commission (“CTFC”) had issued it and others subpoenas in their investigations of the round-trip trades between PSCo and another energy trader. On July 29, 2002, the first day after the investigations were revealed, the trading price of Xcel shares dropped approximately twenty-five percent. That decline followed the thirty-six percent drop that occurred the previous trading day, July 26, 2002.
 

 IV. Xcel’s Public Statements
 

 Plaintiffs allege that defendants, or some of them, knew of the significant risks posed to Xcel stock value by the NRG-related cross default provisions and the round-trip trading. Like the plaintiffs in the securities fraud action joined in this multidistrict litigation, plaintiffs allege that defendants failed to disclose material information and through press releases, other public statements and various SEC filings, misled and ultimately defrauded the investment community, including plaintiffs and other plan participants.
 

 V.The Claims
 

 The gravamen of plaintiffs’ complaint is that defendants knew or should have known of various risks to plan participants who were investing in Xcel stock through the plans. Plaintiffs allege that as plan fiduciaries, defendants were obligated to invest plan funds prudently and with only the interests of plan participants in mind, diversify plan investments, monitor individuals assigned fiduciary duties, investigate matters posing significant risk to the plans, and disclose material adverse information to plan participants. Plaintiffs claim defendants failed in all of these duties, allowing the plans and the plan participants to continue investing in Xcel stock when it was no longer prudent to do so, thereby breaching their fiduciary duties.
 

 DISCUSSION
 

 I. Legal Standards
 

 a. Motions to Dismiss
 

 Defendants move to dismiss the complaints for failure to state a claim upon which relief may be granted and related pleading infirmities. On a motion to dismiss for failure to state a claim, the court typically must take the allegations in the complaint as true, view the complaint in the light most favorable to the plaintiff and dismiss the action “ ‘only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations.’ ”
 
 Alexander v. Peffer,
 
 993 F.2d 1348, 1349 (8th Cir.1993) (quoting
 
 Hishon v. King & Spalding,
 
 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).
 

 Pursuant to Rule 8, the complaint need only set forth the basis of the court’s jurisdiction, a short and plain statement of the claim entitling plaintiff to relief and a demand for judgment. Fed.R.Civ.P. 8(a). Moreover, “[e]ach averment of a pleading
 
 *MCCXVII
 
 shall be simple, concise, and direct” and all pleadings are to be construed in a manner resulting in substantial justice.
 
 See
 
 Fed. R.Civ.P. 8(e)
 
 &
 
 (f). Finally, “factual pleading is required only insofar as it is necessary to place a defendant on notice as to the type of claim alleged and the grounds upon which it rests.”
 
 Mountain View Pharmacy v. Abbott Labs.,
 
 630 F.2d 1383, 1388 (10th Cir.1980).
 

 b. Count I: Breach of Fiduciary Duty Under ERISA
 

 Count I of each complaint alleges breach of fiduciary duty under 29 U.S.C. §§ 1104 & 1109 and breach of co-fiduciary duty under 29 U.S.C. § 1105. To plead breach of fiduciary duty under ERISA, a plaintiff must allege that 1) defendant was a fiduciary of the plan, 2) defendant was acting in that capacity, and 3) defendant breached a fiduciary duty.
 
 See
 
 29 U.S.C. § 1109. An ERISA fiduciary may be “named in the plan instrument, or ... identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.” 29 U.S.C. § 1102(a)(2). Alternatively, a person may be deemed a fiduciary on the basis of his or her functional authority and control relative to the plan. 29 U.S.C. § 1002(21)(A);
 
 Mertens v. Hewitt Assoc.,
 
 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Generally, a fiduciary is one who exercises discretionary control over some aspect of the management or administration of an ERISA plan, or any control whatsoever over plan assets.
 
 See Bd. of Trs. of Bricklayers and Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.,
 
 237 F.3d 270, 273 (3d Cir.2001) (construing 29 U.S.C. § 1002(21)(A)). “[A] fiduciary’s obligations can apply to managing, advising, and administering an ERISA plan....”
 
 Pegram v. Herdrich,
 
 530 U.S. 211, 223, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000).
 

 To determine whether a particular act is undertaken within the scope a fiduciary responsibility, the court begins with the common law of trusts.
 
 See Hughes Aircraft Co. v. Jacobson,
 
 525 U.S. 432, 447, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999). However, unlike the law of trusts, ERISA permits a fiduciary to operate in multiple roles and “wear many hats.”
 
 In re Enron Corp. Sec., Derivative & ERISA Litig.,
 
 284 F.Supp.2d 511, 546 (S.D.Tex.2003). Thus, not every action of an ERISA fiduciary that affects a plan participant need be undertaken in the participant’s best interest.
 
 See id.
 
 at 550. “When making fiduciary decisions, however, a fiduciary may wear only his fiduciary hat.”
 
 Id.
 

 The principal duties owed by ERISA fiduciaries are loyalty and prudence. The duty of loyalty requires that the fiduciary discharge his duties “solely in the interests of the participants and beneficiaries. ...” 29 U.S.C. § 1104(a)(1). The duty of prudence requires that the fiduciary act “with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use.... ” 29 U.S.C. § 1104(a)(1)(B). Prudence is measured by an objective standard.
 
 Fink v. Nat’l Sav. & Trust Co.,
 
 772 F.2d 951, 955 (D.C.Cir.1985).
 

 Other fiduciary obligations required by ERISA are the duties to diversify and to comply with plan documents and instruments.
 
 See
 
 29 U.S.C. § 1104(a)(1)(C) and (D). The duty to diversify is limited in three ways. First, plan investments must be diversified unless it is clearly prudent not to diversify. 29 U.S.C. § 1104(a)(1)(C). Second, in the case of an ESOP, when ownership of company stock
 
 *MCCXVIII
 
 is a principal purpose of the plan, fiduciaries are generally not obligated to diversify unless the failure to diversify would not be in the best interest of plan participants.
 
 See
 
 29 U.S.C. § 1104(a)(2);
 
 see also Eaves v. Penn,
 
 587 F.2d 453, 459 (10th Cir.1978) (“the structure of [ERISA] itself requires that in making an investment decision of whether or not a plan’s assets should be invested in employers [sic] securities, an ESOP fiduciary, just as fiduciaries of other plans, is governed by the ‘solely in the interest’ and ‘prudence’ tests of §§ 404(a)(1)(A) and (B)”). Third, fiduciaries may be absolved of liability where a plan participant’s exercise of individual control over the assets of an individual account resulted in a loss. 29
 
 U.S.C.
 
 § 1104(e)(1)(B).
 

 The duty to follow the directives of the plan documents is limited only by the general constraints of ERISA. The fiduciary must discharge his duties “in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA].” 29 U.S.C. § 1104(a)(1)(D). “[T]rust documents cannot excuse [fiduciaries] from their duties under ERISA, and ... trust documents must generally be construed in light of ERISA’s policies.”
 
 Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Transp., Inc.,
 
 472 U.S. 559, 568, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985).
 

 Two other duties of significance to this action are the power to appoint and remove plan fiduciaries and the duty to disclose relevant information to plan participants. A person with discretionary authority to appoint, maintain and remove plan fiduciaries is himself deemed a fiduciary with respect to the exercise of that authority.
 
 See Coyne & Delany Co. v. Selman,
 
 98 F.3d 1457, 1465 (4th Cir.1996). Implicit in the fiduciary duties attaching to persons empowered to appoint and remove plan fiduciaries is the duty to monitor appointees.
 
 See id.; In re Enron,
 
 284 F.Supp.2d at 553. The scope of the duty to monitor appointees is relatively narrow.
 
 See Coyne,
 
 98
 
 F.3d at
 
 1466 n. 10;
 
 Enron,
 
 284 F.Supp.2d at 554-55.
 

 The duty of disclosure under ERISA has been described as “an area of developing and controversial law.”
 
 In re Enron,
 
 284 F.Supp.2d at 555. Under the common law, a fiduciary’s duty to disclose was generally triggered by a specific request from a beneficiary.
 
 See
 
 Restatement (Second) of Trusts § 173. ERISA expands a fiduciary’s duty to disclose. For example, once one who is acting in a fiduciary capacity endeavors to discuss the plan, he may “not affirmatively miscommu-nicate or mislead plan participants about material matters regarding their ERISA plan.”
 
 In re Enron,
 
 284 F.Supp.2d at 555. In short, “lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1).... ”
 
 Varity Corp. v. Howe,
 
 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).
 

 Some courts have gone further, finding that a fiduciary may have an affirmative duty to disclose material information about which a plan participant would be unlikely to inquire.
 
 See Watson v. Deaconess Waltham Hosp.,
 
 298 F.3d 102, 114 (1st Cir.2002);
 
 Griggs v. E.I. DuPont de Nemours & Co.,
 
 237 F.3d 371, 380-81 (4th Cir.2001);
 
 Bowerman v. Wal-Mart-Stores, Inc.,
 
 226 F.3d 574, 590 (7th Cir.2000);
 
 Bins v. Exxon Co. U.S.A.,
 
 220 F.3d 1042, 1048-49 (9th Cir.2000) (en banc);
 
 Krohn v. Huron Mem’l Hosp.,
 
 173 F.3d 542, 547-48 (6th Cir.1999);
 
 Schmidt v. Sheet Metal Workers’ Nat. Pension Fund,
 
 128 F.3d 541, 546-47 (7th Cir.1997),
 
 cert. denied,
 
 523 U.S. 1073, 118 S.Ct. 1513, 140 L.Ed.2d 667 (1998);
 
 Shea v. Esensten,
 
 107 F.3d 625, 629 (8th Cir.1997),
 
 cert. denied,
 
 522 U.S. 914, 118 S.Ct. 297, 139 L.Ed.2d 229 (1997);
 
 *MCCXIX
 

 Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc.,
 
 93 F.3d 1171, 1181 (3d Cir.1996). One of the strongest assertions of an affirmative duty to disclose is found in
 
 Anweiler v. Am. Elec. Power Svc. Corp.,
 
 3 F.3d 986, 991 (7th Cir.1993). There the court stated “[fiduciaries must also communicate material facts affecting the interests of beneficiaries. This duty exists when a beneficiary asks for information, and even when he or she does not.”
 
 Id.
 
 (citations omitted). The Third Circuit has held that a plan fiduciary has “ ‘an affirmative duty to inform when the [fiduciary] knows that silence might be harmful.’ ”
 
 Adams v. Freedom Forge Corp.,
 
 204 F.3d 475, 480 (3d Cir.2000) (quoting
 
 In re Unisys Corp. Retiree Med. Benefits “ERISA” Litig.,
 
 57 F.3d 1255, 1262 (3d Cir.1995),
 
 cert. denied,
 
 517 U.S. 1103, 116 S.Ct. 1316, 134 L.Ed.2d 470 (1996)).
 

 Other courts have limited the duty to disclose in the absence of a specific inquiry to circumstances where the information in question would have an “extreme impact” on plan beneficiaries.
 
 Ehlmann v. Kaiser Found. Health Plan of Tex.,
 
 198 F.3d 552, 556 (5th Cir.2000) (discussing
 
 McDonald v. Provident Indem. Life Ins. Co.,
 
 60 F.3d 234, 237 (5th Cir.1995),
 
 cert. denied,
 
 522 U.S. 811, 118 S.Ct. 54, 139 L.Ed.2d 19 (1997)). In other circumstances, courts have applied a “serious consideration” analysis to determine what, when and how much a fiduciary must disclose when a beneficiary inquires about a change or proposed change to the ERISA plan.
 
 See Hockett v. Sun Co.,
 
 109 F.3d 1515, 1522-23 (10th Cir.1997);
 
 Muse v. Int’l Bus. Machs. Corp.,
 
 103 F.3d 490, 493-94 (6th Cir.1996),
 
 cert. denied,
 
 520 U.S. 1240, 117 S.Ct. 1844, 137 L.Ed.2d 1048 (1997);
 
 Wilson v. Southwestern Bell Tel. Co.,
 
 55 F.3d 399, 405 (8th Cir.1995);
 
 Barnes v. Lacy,
 
 927 F.2d 539, 544 (11th Cir.),
 
 cert. denied,
 
 502 U.S. 938, 112 S.Ct. 372, 116 L.Ed.2d 324 (1991).
 

 c. Count II: Failure to Make Disclosures Required By ERISA
 

 Count II of each complaint alleges violation of ERISA disclosure requirements. Neither complaint specifies which sections of the statute are alleged to have been violated in this regard. ERISA expressly requires that plan administrators make certain information available to plan participants and others.
 
 See
 
 29 U.S.C. §§ 1021-1026. These include a summary plan description, a plan description, certain annual and supplementary reports, notice of a plan’s failure to meet certain funding standards and notice of certain transfers of excess pension fund assets. 29 U.S.C. § 1021(a)-(e). ERISA also requires that, upon request, plan administrators provide plan participants a written statement of accrued benefits. 29 U.S.C. § 1025. However, it does not appear from the complaints that plaintiffs in this case are asserting violations of these statutory disclosure requirements. The court reads the complaints to allege failures to make disclosures required under ERISA’s general fiduciary obligations of loyalty and prudence discussed in the preceding section of this order.
 

 After carefully reviewing the complaints, the court finds that Count II of each complaint fails to state a claim separate and apart from the claims of breach of fiduciary duty set forth in Count I of the complaints. Therefore, defendants’ motion is granted as to Count II of each of the complaints, inasmuch as those counts simply allege breach of fiduciary duty pursuant to 29 U.S.C. §§ 1104, 1105, 1109 and 1132.
 

 II. Application of the Law to the Facts
 

 Defendants assert that the complaints fail to state a claim upon which relief may be granted. They present a number of arguments which the court addresses in turn.
 

 
 *MCCXX
 
 a. Interest in the Action and Standing
 

 Defendants contend that the complaints fail to allege ownership of or an interest in Xcel securities and therefore plaintiffs lack standing. However, plaintiff Barday alleges that he is an Xcel 401(k) participant. (Barday Compl. ¶ 4.) New-come alleges participation in the ESSOP. (Newcome Compl ¶ 5.) Banks alleges participation in the Xcel 401(k) and the ES-SOP.
 
 (Id.
 
 ¶ 6.) The complaints further allege that company matching contributions are made in Xcel stock. (Barday Compl. ¶¶ 11
 
 &
 
 18; Newcome Compl. ¶¶ 13, 20 & 21.) Those allegations are sufficient to meet the minimal notice pleading requirements of Fed.R.Civ.P. 8. Standing and jurisdiction are conferred by ERISA, under 29 U.S.C. § 1132 and by the federal question jurisdiction statute, 28 U.S.C. § 1331.
 

 b. Identification of Defendants
 

 Defendants contend that the complaints fail because they treat all defendants as fiduciaries but do not set forth specific facts identifying which defendants breached which fiduciary duties. It is not improper for plaintiffs to assert that each defendant is a fiduciary, since that assertion is a necessary element of plaintiffs’ claims.
 
 See
 
 29 U.S.C. § 1109. Plaintiffs allege, in straightforward fashion, that defendants are either named fiduciaries or functional fiduciaries under the applicable ERISA standards. (Barday Compl. ¶¶ 11-16; Newcome Compl. at ¶¶ 13-18.) However, defendants’ contention that plaintiffs fail to cite facts showing which defendants breached which duties is well-taken. The court need not accept as true purely con-clusory statements in the pleadings.
 
 See Moffett v. Halliburton Energy Serv., Inc.,
 
 291 F.3d 1227, 1231 (10th Cir.2002).
 

 Plaintiffs respond that the plan documents fail to properly identify the named fiduciaries or to identify their fiduciary responsibilities. Plaintiffs also argue that they should be afforded some latitude in pleading because ERISA’s assignment of fiduciary duties on the basis of function requires the development of additional facts in discovery.
 
 See
 
 29 U.S.C. § 1002(21) (describing as a fiduciary anyone who (1) exercises authority or control over the management of a plan or its assets, (2) renders investment advice concerning the plan, or (3) has discretionary authority to administer a plan).
 

 In this case, the court agrees with plaintiffs. Notice pleading requires only that defendants be put on notice of the claims so that they may respond to the complaint.
 
 [4]
 

 See Swierkiewicz v. Sorema N.A.,
 
 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002);
 
 see also In re Electronic Data Sys. Corp. ERISA Litig.,
 
 305 F.Supp.2d 658, 665 (E.D.Tex.2004) (noting that “courts will typically have insufficient facts at the motion to dismiss stage from which to make the law/faet analysis necessary to determine functional or named fiduciary status”). While discovery may reveal that some of the facts apply only to some of the defendants, the complaint sufficiently puts all defendants on notice of the fundamental nature of the claims.
 
 [5]
 
 
 *MCCXXI
 

 See Swierkiewicz,
 
 534 U.S. at 513-14, 122 S.Ct. 992. On the other hand, discovery might yield no material evidence whatsoever as to some, or even all, of the defendants. Rule 56 provides the appropriate procedural mechanism in that circumstance.
 
 See
 
 Fed.R.Civ.P. 56(c).
 

 c. Failure to Plead with Particularity
 

 Defendants next argue that plaintiffs fail to plead their claims with the degree of particularity required by Fed. R.Civ.P. 9(b). Some courts have applied the heightened pleading standards of Rule 9(b) to ERISA claims.
 
 See, e.g., Thornton v. Evans,
 
 692 F.2d 1064, 1082 (7th Cir.1982) (expressly requiring plaintiff meet Rule 9(b) pleading requirements);
 
 Shaffer v. Eden,
 
 209 F.R.D. 460, 463 (D.Kan.2002) (same);
 
 Vivien v. Worldcom, Inc.,
 
 2002 WL 31640557, at *7 (N.D.Cal. July 26, 2002) (same);
 
 Adamczyk v. Lever Bros. Co.,
 
 991 F.Supp. 931, 939 (N.D.Ill.1997) (same);
 
 Lochhead v. Alacano,
 
 662 F.Supp. 230, 234 (D.Utah 1987) (same). Other courts have been circumspect in applying Rule 9(b) to ERISA breach of fiduciary duty claims.
 
 See, e.g., In re Elec. Data Sys.,
 
 at 671 (“not ... every breach of a fiduciary duty to inform is a scheme to defraud”);
 
 see also, Concha v. London,
 
 62 F.3d 1493, 1503 (9th Cir.1995),
 
 cert. dismissed,
 
 517 U.S. 1183, 116 S.Ct. 1710, 134 L.Ed.2d 772 (1996);
 
 Precision Vascular Sys., Inc., v. Sarcos, L.C.,
 
 199 F.Supp.2d 1181, 1191 (D.Utah 2002) (both holding that Rule 9(b) did not apply to ERISA breach of fiduciary duty claims that involved elements of fraud or misrepresentation).
 

 Plaintiffs are required to plead with particularity when the alleged breach of the fiduciary is the fraudulent act.
 
 See Concha,
 
 62 F.3d at 1503. In cases where a fraud, misrepresentation or omission is alleged to have occurred but is not itself the basis of the alleged breach, Rule 9(b) is not applied.
 
 See In re Electronic Data Sys.,
 
 2004 WL 253736, at *11. Here, plaintiffs’ breach of fiduciary duty claims are premised on defendants’ failure to act in light of the adverse circumstances that were hidden by the fraudulent conduct. Defendants’ duty to act arose as a result of the adverse conditions, not the alleged fraud. Thus, defendants’ liability, if any, is based upon a different kind of duty than was owed by the securities fraud defendants to the plaintiffs in that case. In short, plaintiffs do not claim they have been defrauded and Rule 9(b) does not apply in these circumstances.
 

 d. Presumption of Prudence for ESOPs
 

 Defendants assert that the presumption of prudence afforded to an
 
 *MCCXXII
 
 ESOP’s investment in company stock also creates a heightened pleading burden that plaintiffs have failed to meet. Given that one of an ESOP’s purposes is to allow employees to acquire equity in their employer’s business, several courts have found a presumption of prudence in a fiduciary’s investment of plan assets in company stock.
 
 See Moench v. Robertson,
 
 62 F.3d 553, 571 (3d Cir.1995);
 
 Kuper v. Iovenko,
 
 66 F.3d 1447, 1459 (6th Cir.1995);
 
 Lalonde v. Textron, Inc.,
 
 270 F.Supp.2d 272, 280 (D.R.I.2003);
 
 In re McKesson HBOC, Inc. ERISA Litig.,
 
 2002 WL 31431588, at *6 (N.D.Cal. Sept.30, 2002). However, presumptions are evidentiary standards that should not be applied to motions to dismiss.
 
 See Swierkiewicz,
 
 534 U.S. at 510-14, 122 S.Ct. 992. Under the liberal pleading standards of Fed.R.Civ.P. 8(a), plaintiffs are not required to plead every fact necessary to set forth a prima facie claim.
 
 [6]
 

 Id.
 
 at 511, 122 S.Ct. 992. Plaintiffs’ claims do not fail on this basis.
 

 e. No Relief Available For Claims As Pleaded
 

 Defendants next complain that plaintiffs’ claims are not appropriately brought under ERISA. Defendants correctly note that 29 U.S.C. § 1132(a)(2) affords relief to an ERISA plan as a whole, not to individual plan participants.
 
 See Mass. Mut. Life Ins. Co. v. Russell,
 
 473 U.S. 134, 142, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Their contention seems to be that plaintiffs seek individual relief that is not allowed under ERISA.
 

 The complaints clearly demonstrate otherwise, as each purports to seek relief on behalf of the respective plans. (Barday Compl. ¶ 1; Newcome Compl. ¶ 1.) Further, the complaints are brought under both § 1132(a)(2) and (3). Section 1132(a)(2) permits a plan participant to bring an action for breach of fiduciary duty to restore losses to the plan.
 
 See Mass. Mut.,
 
 473 U.S. at 142 n. 9, 105 S.Ct. 3085. Section 1132(a)(3) permits a plan participant to seek injunctive or equitable relief for violations of the subchapter or of a plan directive.
 
 See Bugher v. Feightner,
 
 722 F.2d 1356, 1358 (7th Cir.1983). As a matter of pleading under Fed.R.Civ.P. 8, plaintiffs have asserted legal claims for which relief can be granted.
 

 f. Defendants Were Not Acting as Fiduciaries
 

 To adequately assert claims of breach of fiduciary duty, plaintiffs must allege that defendants were fiduciaries acting in a fiduciary capacity.
 
 See
 
 29 U.S.C. § 1002(21);
 
 Mertens,
 
 508 U.S. at 262, 113 S.Ct. 2063. Defendants argue, inter alia, that they were not acting as fiduciaries, that the company is the designated fiduciary, that individuals on committees with fiduciary responsibility such as the Finance Committee were not acting in an individual capacity and that the Finance Committee was responsible only for oversight. These arguments deny factual allegations rather than challenge the sufficiency of the pleadings. Therefore, the court finds them unavailing in the context of the present motion.
 

 Plaintiffs allege that each defendant was acting as a fiduciary with respect to some or all of the factual assertions in the complaints. (Barday Compl. ¶¶ 11-17; Newcome Compl. ¶¶ 13-18.) Because the factual assertions in the com
 
 *MCCXXIII
 
 plaint must be taken as true and afforded every reasonable inference, defendants’ objection fails.
 
 See Hishon v. King & Spalding,
 
 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). Further, it would be “premature to determine a defendant’s fiduciary status at the motion to dismiss stage of the proceedings,” because a determination of fiduciary status based on function is a “mixed question of law and fact.”
 
 Elec. Data Sys.,
 
 at 665. Finally, “ ‘fiduciary status under ERISA is to be construed liberally, consistent with ERISA’s policies and objectives.’ ”
 
 Id.
 
 (quoting
 
 In re Enron,
 
 284 F.Supp.2d at 544). Thus, the court finds that plaintiffs have sufficiently pleaded fiduciary status.
 

 g. Plan Design is Not a Fiduciary Function
 

 Defendants argue that such plan elements as the requirements that ESOP funds be invested in company stock, that participants be restricted from trading in the ESOP until the age of fifty-five and that company stock be offered as an option in the non-ESOP portion of the plan are plan design decisions that are not subject to ERISA’s fiduciary standards. It is well settled that plan design, as opposed to plan administration, is not a fiduciary function.
 
 Hughes Aircraft Co. v. Jacobson,
 
 525 U.S. 432, 444, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999).
 

 Plaintiffs do not assert that the plan on its face violates a fiduciary duty, as such an assertion would be absurd. Rather, plaintiffs argue that defendants’ subsequent action or inaction falls within ERISA’s fiduciary rubric. Plaintiffs agree that the company was free to design the plan in any manner consistent with ERISA.
 
 See Averhart v. US WEST Mgmt. Pension Plan,
 
 46 F.3d 1480, 1488 (10th Cir.1995). They also agree that there is no general duty to diversify an ESOP. However, when the failure to do so is not in the best interest of beneficiaries, a fiduciary may be in breach.
 
 See Eaves,
 
 587 F.2d at 459. Nor can a fiduciary blindly follow plan directives to the obvious detriment of the beneficiary.
 
 See
 
 29 U.S.C. § 1104(a)(1)(D) (stating that fiduciary must comply with plan instruments only to the extent that they are consistent with the other provisions of § 1104, including the duties of loyalty and prudence). Plaintiffs also argue that defendants had an affirmative duty to disclose after they became aware of material adverse information about the true value of the stock. Since plaintiffs do not challenge the initial design of the plans, defendants’ argument is unavailing.
 

 h. No Breach of Fiduciary Duty
 

 Defendants next assert that even if they could be construed as plan fiduciaries, their actions did not constitute a breach of duty. First, defendants contend that their fiduciary duties do not obligate them to violate the securities laws. They argue that to have revealed the adverse information to plaintiffs apart from the market at large or to have selectively acted upon that information to the plans’ benefit could have constituted illegal insider trading. Second, defendants argue that it was not a breach to invest and to continue to invest in Xcel stock. Third, defendants note that individual account plans may be exempt from the statutory diversification requirement.
 
 See
 
 29 U.S.C. § 1104(a)(2). Finally, defendants again argue that plaintiffs have failed to overcome the presumption of prudence attaching to decisions to invest ESOP funds in company stock.
 

 The court has previously addressed all but the first of these arguments and will not repeat its conclusions here. As to defendants’ insider trading argument, the court joins those courts holding that ERISA plan fiduciaries can
 
 *MCCXXIV
 
 not use the securities laws to shield themselves from potential liability for alleged breaches of their statutory duties.
 
 See In re Elec. Data Sys.,
 
 at 672;
 
 In re Enron,
 
 284 F.Supp.2d 511, 565. As Judge Harmon commented:
 

 As a matter of public policy, the statutes should be interpreted to require that persons follow the laws, not undermine them. They should be construed not to cancel out the disclosure obligations under both statutes or to mandate concealment, which would only serve to make the harm more widespread; the statutes should be construed to require, as they do, disclosure by [company] officials and plan fiduciaries of [the company’s] concealed, material financial status to the investing public generally, including plan participants, whether ‘impractical’ or not....
 

 In re Enron,
 
 284 F.Supp.2d at 565-66. Therefore, defendants’ motion will not be granted on the basis of the insider trading argument.
 
 [7]
 

 i. No Duty to Disclose
 

 Defendants argue that the only disclosures required by ERISA are those mandated in sections 1021-1026. Defendants contend that they had no duty to disclose negative information about the company’s financial condition.
 
 See Uselton v. Commercial Lovelace Motor Freight, Inc.,
 
 940 F.2d 564, 581-82 (10th Cir.1991);
 
 see also Bd. of Trs. of the CWA/ITU Negotiated Pension Plan v. Weinstein,
 
 107 F.3d 139, 143-46 (2d Cir.1997) (holding that ERISA does not mandate disclosure of all information that could conceivably be beneficial to plan participants).
 

 However, a number of courts have held that a fiduciary’s duty to disclose goes beyond the specific matters identified in sections 1021-1026 and is not triggered only by a specific inquiry.
 
 See Varity,
 
 516 U.S. at 506, 116 S.Ct. 1065 (suggesting but not deciding that the duty to disclose extends beyond sections 1021-1026);
 
 Jordan v. Fed. Express Corp.,
 
 116 F.3d 1005, 1012-14 (3d Cir.1997);
 
 Shea v. Esensten,
 
 107 F.3d 625, 628 (8th Cir.1997),
 
 cert. denied,
 
 522 U.S. 914, 118 S.Ct. 297, 139 L.Ed.2d 229 (1997);
 
 Glaziers & Glassworkers,
 
 93 F.3d at 1181;
 
 Neuma, Inc. v. E.I. DuPont de Nemours & Co.,
 
 133 F.Supp.2d 1082, 1085 (N.D.Ill.2001). The law of disclosure under ERISA is both controversial and evolving.
 
 See In re Enron,
 
 284 F.Supp.2d at 555. For that reason, the issue is more amenable to resolution on a motion for summary judgment after discovery has shed further light on the facts and circumstances of the case.
 

 j. No Showing of Causation or Reliance
 

 Defendants argue that plaintiffs fail to allege that they relied upon omissions or misrepresentations to their detriment. Defendants also argue that plaintiffs cannot show that the alleged misrepresentations or omissions caused their harm because an earlier public disclosure would have resulted in the same market correction that ultimately reduced the value of Xcel stock.
 

 Defendants’ may misapprehend the nature of plaintiffs’ complaint and the requirements of Fed.R.Civ.P. 8. First, plaintiffs specifically allege harm to the plan stemming from the various breaches of
 
 *MCCXXV
 
 duty asserted in the complaints. (Barday Compl. at ¶ 81; Newcome Compl. ¶ 84.) Second, plaintiffs offer the omissions and misstatements as indicia of defendants’ failure to take affirmative steps to protect the plan in breach of the duties of prudence and loyalty and the duty to disclose. By its terms, ERISA requires that the alleged losses result from the breach. 29 U.S.C. § 1109(a). Plaintiffs allege exactly that. Rule 8 requires nothing more.
 
 See
 
 Fed.R.Civ.P. 8(a);
 
 Swierkiewicz,
 
 534 U.S. at 512, 122 S.Ct. 992.
 

 k. No Application of 29 U.S.C. § 1104(c)
 

 Defendants complain that plaintiffs’ references to 29 U.S.C. § 1104(c) are inappropriate. That section allows plan fiduciaries to avoid liability for breach where plan participants exercised control over assets in individual accounts.
 
 See
 
 29 U.S.C. § 1104(c)(1)(B). Defendants contend that section 1104(c) provides an affirmative defense that they have not raised at this point in the litigation. The court agrees and accordingly it has not applied that section in its consideration of the present motion.
 

 CONCLUSION
 

 Based on the files and pleadings in this matter, and for the reasons stated, IT IS HEREBY ORDERED that:
 

 l. Defendants’ motions to dismiss are granted in part and denied in part. The motions are granted inasmuch as Count II of the complaint in
 
 Barday v. Xcel Energy, Inc. et al.,
 
 Civil No. 03-2219 and Count II of the complaint in
 
 Newcome & Banks v. Xcel Energy, Inc. et al.,
 
 Civil No 03-2218, are dismissed. Defendants’ motions are denied in all other respects.
 

 2. This order shall be docketed in Master File No. 02-2677 and in files 03-2218 and 03-2219.
 

 [1]
 

 . The two actions at issue here were consolidated with a group of securities fraud actions and a shareholder derivative action and transferred to this district for pretrial adjudication by the Judicial Panel on Multidistrict Litigation pursuant to 28 U.S.C. § 1407.
 

 [2]
 

 . Round-trip trades or wash sales occur when an energy producer or wholesaler purchases energy and then sells it back at the same price. Round trip trades are considered sham transactions because they artificially inflate sales revenue for each company without impacting profitability.
 

 [3]
 

 . The trustees of the two plans are not parties in the litigation.
 

 [4]
 

 . Defendants' claim that plaintiffs cannot aver "that they lack information to plead with specificity ... [because plaintiffs] should have a summary plan for each plan in which they participated....” (Defs.' Mem. Supp. Mot. Dismiss at 15.) The court finds no merit in that argument. Defendants' assertion is a correct statement of a duty ERISA places upon them or some of them as plan administrators. 29 U.S.C. § 1021. It is not, however, a correct statement of a relevant undisputed fact.
 

 [5]
 

 . As is the case here, the court in
 
 Electronic Data Sys.
 
 was presented with plan documents attached to defendants’ brief in support of its
 
 *MCCXXI
 
 motion to dismiss.
 
 See In re Elec. Data Sys.,
 
 at 664-65. Citing Fifth Circuit case law, the court noted that the inclusion of materials outside the pleadings did not require the court to convert the motion to a Rule 56 summary judgment proceeding because the plan documents were publicly filed, subject to judicial notice, referred to by plaintiffs and necessary to plaintiffs’ claims.
 
 Id.
 
 at 664. The court also noted that it would be “inappropriate at [the motion to dismiss stage] to construe the Plan terms and make factual findings regarding the extent to which the Plan delegates or does not delegate different fiduciary duties among the defendants.”
 
 Id.
 
 at 665. The court also pointed out that plaintiffs had alleged functional fiduciary status, effectively mooting the issue of plan designation for purposes of the Rule 12(b)(6) motion.
 
 Id.
 
 at 665. This court agrees with and adopts Judge Davis’ reasoning in regard to both the appropriateness of appending purported plan documents to a motion to dismiss and the inappropriateness of making factual findings that are unnecessary at this stage of the proceedings. The court notes plaintiffs’ objection to the submission of the documents and that plaintiffs do not stipulate that they are the plan instruments that were in effect during the relevant time period.
 

 [6]
 

 . Moreover, the application of the presumption of prudence to an ESOP fiduciary's investment in company stock merely requires plaintiffs to allege that continued investment in the company stock constituted an abuse of discretion in light of the circumstances.
 
 See In re McKesson,
 
 2002 WL 31431588, at *6. Plaintiffs have alleged exactly that. (Barday Compl. at ¶¶ 84-85; Newcome Compl. at ¶¶ 87-88.)
 

 [7]
 

 . Defendants' tender a related argument alleging that plaintiffs cannot show that the alleged breaches of duty caused harm to the plan. In the context of the insider trading argument, defendants assert that an earlier public disclosure of the adverse information would have resulted in the same decline in stock value, so that the purported breach could not have been the proximate cause of any harm to the plans. The court addresses the cause argument below.