# United States Court of Appeals
## For the Eighth Circuit
_____

No. 20-3600
_____

Edward F. Delker

*Plaintiff - Appellant*

v.

MasterCard International, Inc.; MasterCard Technologies, LLC

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 22, 2021
Filed: January 5, 2022
_____

Before SMITH, Chief Judge, GRUENDER and STRAS, Circuit Judges.
_____

SMITH, Chief Judge.

Edward Delker brought suit against MasterCard International, Inc. and MasterCard Technologies, LLC (MasterCard) for life insurance benefits under MasterCard's employee benefits plan. Mr. Delker alleged breach of fiduciary duty under the Employee Retirement and Income Security Act (ERISA), breach of contract, and fraud. The district court granted MasterCard's motion to dismiss as to

all claims. Upon review, we conclude that Mr. Delker stated a plausible claim for breach of fiduciary duty. Consequently, we reverse as to that claim. We affirm the district court as to the remaining claims.

## I. *Background*

Julie Delker worked for MasterCard from 1997 until her death in 2016. MasterCard employees could enroll in employer-sponsored benefit plans. MasterCard's benefit plan offerings included core life insurance at 100 percent of employees' annual earnings. MasterCard fully funded core benefits for all employees with no choice to opt out of coverage. In addition to the core life insurance, all employees were entitled to purchase additional life insurance in multiples of up to six times their salary. Also, those employees "hired on or prior to December 31, 2001, . . . [would] receive enough credits to elect up to three times [their] salary for life insurance."[1] R. Doc. 17-8. Mrs. Delker, based on her employment start date, received sufficient credits from MasterCard to elect life insurance coverage for up to three times her annual salary.

During annual enrollment periods, MasterCard employees would complete forms entitled "Submit Elections Confirmation," which would allow them to enroll or decline to enroll in the various benefit plans that the company offered its employees. *See, e.g.*, R. Doc. 53-2. The forms contain three tables followed by blanks for employees' signatures with the option of signing electronically. Table 1—"Elected Coverages"—identifies the employee's elected benefit plans and provides pertinent details. *Id.* at 1. It contains columns setting out the plan title, the start dates for coverage and for deductions, a short explanation of coverage, the dollar amount of coverage, plan beneficiaries, the semi-monthly expense to the employee,

---

[1]The 2008 guide also states that credits need not be used exclusively for life insurance, but could also go toward a Long-Term Disability (LTD) benefit of up to 66% of salary (the core benefit for LTD being 50% of salary).

and the semi-monthly contribution of the employer.[2] The final row of the table sets forth the total costs to the employee and to the employer respectively. Table 2—"Waived Coverages"—lists plans for which the employee has declined enrollment. *Id.* at 2. Table 3—"Beneficiary Designations"—provides employees space to designate and allot percentages to beneficiaries for plans that benefit a third party other than the employee. *Id.*

Mrs. Delker electronically signed a "Submit Elections Confirmation" form, subtitled "Open Enrollment for Julie Delker,"on October 25, 2012. *Id.* at 1. Table 1 indicates that she enrolled in the plan "Core Employee Life - Prudential (Employee)" for a benefit of "1 X Salary" with coverage and deductions beginning January 1, 2012. As a core plan, this coverage was paid for in its entirety by MasterCard's contribution. *Id.* The row immediately below indicates that Mrs. Delker elected to enroll in the plan "Life Employer Credit - MasterCard Worldwide (Employee)" for a benefit of "2 X Salary" with coverage and deductions beginning September 1, 2011, also paid for in its entirety by MasterCard. *Id.* The total figure for the column "Employer Contribution (Semi-monthly)" includes both MasterCard's contribution of $4.58 to the "Core Employee Life" plan and its contribution of $12.93 to the "Life Employer Credit" plan. *Id.* at 1–2. Table 2 indicates that Mrs. Delker waived the "Optional Life" benefit plans. *Id* at 2. Table 3 indicates that for the benefit plan "Core Employee Life - Prudential (Employee)," Mrs. Delker selected Mr. Delker to be her sole beneficiary. *Id.* at 2.

Mrs. Delker submitted the same election form during the enrollment periods in 2013 and 2014, each time electing "Life Employer Credit - MasterCard Worldwide (Employee)." *See* R. Doc. 53-3, R. Doc. 53-4. According to MasterCard's annual enrollment guide, a previous life insurance election meant that employees would be

---

[2]Additionally, the table contains a column that allows the employee to indicate any dependents under the plans, but that detail is not relevant here.

enrolled automatically in the same plan until a different election is made during a subsequent enrollment period. R. Doc. 32-5, at 182. In other words, opting out of previous coverage would have required the employee to choose to do so. Mrs. Delker made no enrollment change before 2015; however, Mrs. Delker's elections confirmation form for 2015 is not part of the record.

According to the complaint, Mrs. Delker and her husband believed, based on MasterCard's representations on its enrollment form and in its enrollment guide, that she had elected life insurance coverage equal to three times her salary, funded entirely by her employer through its core benefit offering and the longtime-employee credit. Based on this belief, they refrained from purchasing any additional life insurance.

On August 2, 2016, Mrs. Delker passed away. On August 8, the Director of Global Benefits at MasterCard informed Mr. Delker by letter that he was entitled to receive three times his wife's salary as her life insurance beneficiary. MasterCard reiterated its belief in his entitlement to this benefit in several subsequent communications, including by phone. Mr. Delker also received a Beneficiary Statement inviting him to complete and return it to the Director of Global Benefits for submission to The Prudential Insurance Company (Prudential), the claims administrator for MasterCard's life insurance plans. Mr. Delker completed the form and returned it to MasterCard, and MasterCard submitted his form to Prudential. The form indicated coverage under "Basic Term Life" in the amount of one times Mrs. Delker's salary and "Group Universal Life" for two times her salary; the form also indicated that Mrs. Delker was not covered under several other life insurance plans, including one called "Optional Term Life." R. Doc. 53-6, at 2.

After receipt from MasterCard, Prudential reviewed the claim and determined that Mr. Delker was only entitled to a benefit in the amount of one times his wife's salary of $144,000 because MasterCard had only paid premiums toward that amount. Prudential notified Mr. Delker that, contrary to MasterCard's understanding, he was

not entitled to a three-times salary benefit. MasterCard thereafter informed Mr. Delker that its earlier determination that he would be entitled to three times his wife's salary had been an "administrative error," and in fact he was not entitled to such a sum because the company's records did not show that she had purchased any life insurance beyond the core benefit. R. Doc. 53, at 5. Prudential thereafter paid Mr. Delker $144,000 and denied the remainder of his claim.

On November 30, 2018, Mr. Delker filed suit in Missouri state court alleging fraud, breach of contract, and negligence/breach of fiduciary duty. MasterCard timely removed the case to federal court. It asserted federal jurisdiction based on ERISA's governance of the MasterCard benefits plan. The district court, denying a motion to remand, agreed with MasterCard and concluded that 29 U.S.C. § 1132(a) provided the basis for the relief that Mr. Delker sought. On June 18, 2019, Mr. Delker filed an amended complaint to plead his state-law claims as ERISA claims. On July 15, 2020, Mr. Delker filed a second amended complaint, alleging breach of fiduciary duty, breach of contract, and fraud.

MasterCard moved to dismiss the second amended complaint. The court granted its motion and dismissed the suit with prejudice, concluding that there was no plausible allegation that Mrs. Delker had used her employer credits to elect three times her salary in life insurance. The court also found that MasterCard was a fiduciary for ERISA purposes, but it did not breach its duty by making a material misrepresentation. The court held that the breach-of-contract claim failed because the wrong party was served and that the fraud claim was without merit. The court denied Mr. Delker's motion to amend the complaint as futile. Mr. Delker appeals.

## II. *Standard of Review*

We review de novo a district court's dismissal of a pleading under Federal Rule of Civil Procedure 12(b)(6). *Dormani v. Target Corp.*, 970 F.3d 910, 914 (8th Cir. 2020). In conducting our review, we assume the truth of all factual allegations in the

complaint and make all reasonable inferences in favor of the nonmoving party, *id.*, but we are not bound to accept the truth of legal conclusions couched as factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To overcome a defendant's motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[S]pecific facts are not necessary;" a plaintiff need only allege sufficient facts to provide "fair notice" of the claim and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555).

Stating an adequate claim for relief requires more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Rather, the complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). This standard "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* at 556. The key issue is threshold plausibility, to determine whether a plaintiff is entitled to present evidence in support of his claim and not whether it is likely that he will ultimately prevail. *Id.*

### III. *Discussion*

Mr. Delker originally brought state-law claims in state court; the district court concluded that these claims were preempted because the benefit plan in question is an ERISA-governed plan. *See Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 907 (8th Cir. 2005). Thus, the suit may be construed as being brought under 29 U.S.C. § 1132(a). In relevant part, this section enables plan participants and beneficiaries to bring civil actions to recover benefits and enforce

rights under the plans, 29 U.S.C. § 1132(a)(1)(B), and to obtain equitable relief for violations of the terms of the plan or to enforce the plan's terms, *id.* § 1132(a)(3).

The district court accurately observed that an employee's claim to recover benefits cannot be brought against an employer under § 1132(a)(1)(B). While the circuits are split on the identity of proper defendants under this provision, an employer is generally not considered to be an appropriate defendant. *See Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1194 (8th Cir. 1998). Mr. Delker has not sued the insurer, but instead has sued his deceased wife's employer who allegedly made misleading statements and failed to make good on its promises in violation of the fiduciary duty it owed the Delkers. For this reason, Mr. Delker's claims may be construed as claims against MasterCard as a functional fiduciary under § 1132(a)(3) based on the equitable theory of detrimental reliance. *See Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001) (noting that a breach-of-fiduciary-duty claim for misrepresentation requires proof of reasonable detrimental reliance).

A. *Breach of Fiduciary Duty*

A claim for breach of fiduciary duty under ERISA requires three elements: "1) defendant was a fiduciary of the plan, 2) defendant was acting in that capacity, and 3) defendant breached a fiduciary duty." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 312 F. Supp. 2d 1165, 1175 (D. Minn. 2004) (citing 29 U.S.C. § 1109). Under ERISA, a person or entity may be explicitly named a fiduciary or may be deemed one based on the functional authority held by the same. *Id.* (citing 29 U.S.C. §§ 1102(a)(2), 1002(21)(A)). A fiduciary duty arises as to aspects of an ERISA benefit plan over which a person or entity exercises authority. *See Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006).

"ERISA imposes upon fiduciaries twin duties of loyalty and prudence. . . ." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009). The duty of loyalty requires that fiduciaries act in the sole interest of benefit plan participants and

beneficiaries; the duty of prudence mandates "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

Making materially misleading statements constitutes a violation of a fiduciary's duties of loyalty and prudence. *See Howe v. Varity Corp.*, 36 F.3d 746, 754 (8th Cir. 1994), *aff'd*, 516 U.S. 489 (1996). At times, this "duty goes beyond merely refraining from making affirmative misrepresentations" to include a duty to advise and inform about circumstances that threaten the interests of one to whom a fiduciary duty is owed. *Id*. In this context, a statement is materially misleading if substantially likely to mislead a reasonable employee making decisions about employer benefits and entitlements. *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 644 (8th Cir. 2007).

It is important to note "that the duty of loyalty requires an ERISA fiduciary to communicate any material facts which could adversely affect a plan member's interests." *Shea v. Esensten*, 107 F.3d 625, 628 (8th Cir. 1997). This includes "answering questions about a plan, noting changes in the plan, [and] disseminating information directly to plan participants concerning their rights within the plan." *Anderson v. Resol. Tr. Corp.*, 66 F.3d 956, 960 (8th Cir. 1995) (alteration in original) (quoting *Pickering v. USX Corp.*, 809 F. Supp. 1501, 1567–68 (D. Utah 1992)). These are all "classic fiduciary activities" implicating the duties of loyalty and prudence. *Id.* (quoting *Pickering*, 809 F. Supp. at 1568). In addition to demonstrating that pertinent statements were materially misleading, a plaintiff must further establish that he reasonably relied to his detriment on such statements in order to succeed on an ERISA misrepresentation claim. *Brant v. Principal Life & Disability Ins. Co.*, 50 F. App'x 330, 332 (8th Cir. 2002) (unpublished per curiam).

The district court considered MasterCard to be an ERISA fiduciary based on Mr. Delker's allegations that the company "provided plan information, [was] directly

involved in enrollment, and paid employee premiums." *Delker v. MasterCard Int'l Inc.*, No. 4:19-CV-43-RWS, 2020 WL 6708522, at *3 (E.D. Mo. Nov. 16, 2020). The court reasoned that such actions "may constitute an exercise of discretionary authority respecting management or administration of the plan." *Id*. As such, MasterCard had a fiduciary duty to avoid misleading Mrs. Delker, as plan participant, and Mr. Delker, as beneficiary, regarding the former's coverage. The sole issue then is whether Mr. Delker plausibly alleges that MasterCard breached its duty to the Delkers.

Mr. Delker alleges that the company breached its fiduciary duty by failing to pay life insurance premiums as promised, by making material misrepresentations (including the promise to pay premiums) respecting Mrs. Delker's coverage, and by failing to provide adequate information about Mrs. Delker's life insurance benefits. In the first instance, Mr. Delker alleges that MasterCard represented to Mrs. Delker that she was entitled to life insurance benefits equal to three times her salary and that the company would pay the premiums for this insurance.[3] Mr. Delker's allegation refers to statements from MasterCard's 2007 and 2008 Open Enrollment Guides that stated that employees "hired on or prior to December 31, 2001, . . . [would] . . . receive enough credits . . . to elect up to three times [their] basic annual salary for life insurance." R. Doc. 53-1, at 2; *see also* R. Doc. 53-1, at 4. His allegation also references statements on the "Submit Elections Confirmation" form used for electing benefit plans. R. Doc. 53-3; R. Doc. 53-4.

The district court concluded that, while MasterCard indeed owed Mr. Delker a fiduciary duty, he had failed to allege a plausible breach of that duty. The district court determined that MasterCard's statements were not misrepresentations because they would not have misled a reasonable employee. The court reasoned that the

---

[3]MasterCard paid premiums for one times annual salary in life insurance as a core benefit, a mandatory program that employees could not opt out of, and which Prudential paid out to Mr. Delker. At issue here is the additional two-times salary benefit that he alleges his wife elected.

language of the enrollment guides and confirmation forms explicitly calls for an election to be made in order to receive additional life insurance coverage and that Mrs. Delker had failed to make this election. In addition, the court noted that the form language indicates that MasterCard would only provide credits, not pay premiums: as the "Submit Elections Confirmation" form "clearly label[s] the benefit as a credit," Mrs. Delker had only elected to receive a credit and had not successfully elected to enroll in a benefit plan. *Delker*, 2020 WL 6708522, at *4.

Mr. Delker, for his part, argues that his wife in fact made the necessary election. *See* R. Doc. 53, at 8 (referring to Mrs. Delker's "elected life insurance benefits" in her "Submit Elections Confirmation" form). In the alternative, if she actually failed to do so, her failure to elect additional life insurance was the result of MasterCard's materially misleading statements. *See id.* at 6 (stating that MasterCard's misrepresentations caused Mrs. Delker to forgo additional coverage). At this stage, Mr. Delker's allegations need only be plausible, not likely. Considering the evidence in the light most favorable to Mr. Delker, it is plausible that his wife made the election. Numerous explicit representations as well as the overall context in which the election took place constitute evidence that Mrs. Delker in fact used her credits to purchase additional life insurance.

The "Submit Elections Confirmation" form which is subtitled "Open Enrollment for Julie Delker" can be reasonably interpreted as showing that she made the election. R. Doc. 53-3; R. Doc. 53-4. It lists all the benefit plans in which Mrs. Delker was enrolled. The most natural reading of this table conforms to Mr. Delker's understanding. The presence of a benefit plan in this table supports the allegation that Mrs. Delker was enrolled in that plan; indeed, "enrollment" is the very purpose of the "Submit Elections Confirmation" form. The fact that the "Life Employer Credit" (with coverage at exactly the expected amount—"2 X Salary") appears among the other plans suggests that it, too, is a plan in which she had successfully enrolled. *Id*. Moreover, the Life Employer Credit has start dates for both coverage and deduction.

-10-

The presence of the word "credit" does not render Mr. Delker's allegations of the operation plan implausible. The meaning of the word is not undisputed nor indisputable on the record. MasterCard's view of its meaning cannot be preferred at this stage. The plan's labeling is not so plain on its face that allegations contrary to MasterCard's are implausible on their face. For example, none of the other benefit plans, in which Mrs. Delker undisputedly was enrolled, are labeled "plan." One (equally, if not more) plausible reading is that the "credit" labeling simply signifies that the plan was purchased with credits as opposed to salary deductions. MasterCard permitted all employees to purchase additional life insurance, up to six times their salary. Having a special bucket for insurance purchased with the longtime employee credit, separate from the optional life insurance available to all employees, could have been intended to keep the multiple variables in this insurance schema straight.

And indeed, this explanation would also clarify why on Mrs. Delker's forms, "Optional Life" appears in the table "Waived Coverages."[4] *Id*. In addition, credits could also go toward a LTD benefit of up to 66 percent of an employee's annual salary. MasterCard has not explained why the supposed election of a credit that could go to either LTD or life insurance only references the latter. However, this designation would make perfect sense if her election was not merely of the credit but

---

[4] MasterCard argues that the appearance of "Optional Life" in the "Waived Coverages" table on these forms shows conclusively that Mrs. Delker waived all additional life insurance. Mr. Delker responds, and MasterCard does not deny, that this refers to additional life insurance available to all employees and did not encompass the particular credit program available to Mrs. Delker as a longtime employee. This distinction is consistent with the form that MasterCard sent to Prudential for Mr. Delker's life-insurance-benefit claim. On this form, the plan called "Basic Term Life" clearly corresponds to the core life insurance benefit, "Group Universal Life" clearly corresponds to the longtime employee credit, and "Optional Term" presumably corresponds to the optional life on the elections confirmation form. R. Doc. 53-6, at 2. On both forms, there are three different insurance plan buckets, each with an exact analog on the other form, and, in particular, on both forms, the plans designated "optional" are waived.

of the actual benefit plan. Clearly, Mr. Delker's assertion that his wife in fact elected life insurance in the amount of three times her annual salary is plausible; indeed, it is the most straightforward and natural reading of MasterCard's own forms.

MasterCard's assertion that employees had to elect to receive credits—and only after this initial election could they elect to spend those credits on life insurance—is at odds with the plain language of MasterCard's own enrollment guide. The guide states that employees hired on or before December 31, 2001 "will . . . receive enough credits . . . to elect" a three-times salary life insurance benefit. R. Doc. 53-1, at 2. The sole condition for receipt of credits is having a hiring date on or before December 31, 2001. The guide does not communicate any need for further action on the part of the employee in order to gain access to these credits. *Id*.

As discussed above, the elections confirmation forms show a semi-monthly contribution from the employer. This contribution, as to most benefits in its plan, represents premiums MasterCard actually paid to the insurer on Mrs. Delker's behalf. However, MasterCard takes the position with respect to her life insurance coverage that its bestowal of credits did not amount to a promise to pay the premiums. This raises the obvious question of just what the credits are meant to do. Such issues, however, are not appropriate for resolution based on the pleadings. As the record stands, Mr. Delker has plausibly alleged that the offer of credits constituted a promise to pay premiums on behalf of his wife.

We conclude that Mr. Delker has plausibly alleged that his wife elected a total amount of three times her salary in life insurance, for which MasterCard promised to pay premiums. *See* R. Doc. 53, at 2, 8. If that proves true, MasterCard's failure to pay premiums would constitute a breach of the fiduciary duty it owed its employees participating in its ERISA-governed benefit plan. He has further plausibly alleged that, if his wife's election was in fact deficient for any reason, MasterCard's materially misleading statements caused her to reasonably believe that she had elected three times her salary in life insurance, premiums paid by her employer, and to rely

upon that belief in declining to purchase additional life insurance as she was entitled to do. *See id.* at 6. His wife's waiver of optional insurance, construed most favorably to Mr. Delker, may show such reliance. Furthermore, MasterCard's representations to Mr. Delker on various occasions that he was entitled to three times her salary in life insurance could show that the Delkers' belief that Mrs. Delker was insured at such an amount was indeed reasonable. The district court, in ruling on MasterCard's motion to dismiss, did not give Mr. Delker the benefit of such reasonable inferences.

## B. *Futility of Amendment*

The district court stated that permitting Mr. Delker to amend his second amended complaint would be futile "given that Plaintiff has had multiple opportunities to amend his complaint and has failed to plead misrepresentation or entitlement to benefits under the plan." *Delker*, 2020 WL 6708522, at *6. As discussed above, Mr. Delker has indeed pleaded facts sufficient to state a claim and thereby to survive MasterCard's motion to dismiss as to his claims of misrepresentation. Hence, it is not necessary to plead additional facts at this stage. As to his 29 U.S.C. § 1132(a)(1)(B) claims, amendment would indeed be futile because his allegations only entitle him to equitable relief against MasterCard, which is not a proper defendant under this provision.

## III. *Conclusion*

For the foregoing reasons, we now reverse as to the issue of breach of fiduciary duty, while we affirm as to the remaining claims.

_____